ERLENE MORGAN, Plaintiff-Appellant, *v.* DALTON MANAGEMENT COMPANY, Defendant-Appellee (David Hunter, Defendant).

First District (4th Division) No. 82—2878

Opinion filed September 8, 1983.

William D. Maddux & Associates, of Chicago (Bruce M. Lane, of counsel), for appellant.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll, Lloyd E. Williams, Jr., and Edward J. Murphy, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

This action requires the court to determine whether a landlord owes a duty to his tenant to prevent other tenants from tortiously injuring her in common areas of an apartment building. The plaintiff, Erlene Morgan, brought suit for personal injuries and permanent disfigurement against her landlord, Dalton Management Company, and her assailant, David Hunter. The circuit court dismissed the count of the plaintiff's complaint pertaining to Dalton because it found that no legal duty flowed from Dalton to the plaintiff to prevent Hunter from harming the plaintiff. The plaintiff now appeals from the trial court's dismissal of the count of her complaint relating to Dalton. Dalton is the only defendant who is a party to this appeal.

Both the plaintiff and Hunter were tenants in the same apartment building. The building was managed and maintained by the defendant Dalton. Another individual named Tony McClerty lived with Hunter and apparently was a nontenant who had not signed a lease with Dalton. In September 1979, McClerty kicked in the locked door of the plaintiff's apartment. The plaintiff reported this incident to Dalton and to the police. This incident between McClerty and the plaintiff is the only altercation which occurred between the two individuals. Hunter twice threatened to harm the plaintiff if she did not avoid McClerty. The record is void of any reference as to where these threats took place. The plaintiff reported the two incidents to a maintenance engineer who was employed by the defendant and who was stationed in the apartment building. During neither threatening incident did Hunter attempt to harm the plaintiff on her property. On October 31, 1979, Hunter threw acid at the plaintiff while they were both riding in an elevator in the apartment building. The plaintiff suffered personal injuries and disfigurement.

Clause 8 of the plaintiff's lease with Dalton provides:

"8. TENANT'S USE OF APARTMENT. The Apartment shall be occupied solely for residential purposes by Tenant, those other persons specifically listed in the Application for this Lease, and any children which may be born to or legally adopted by Tenant. Unless otherwise agreed in writing, guests of Tenant may occupy the Apartment in reasonable numbers for no more than three weeks each during each year of the Term hereof. Neither Tenant nor any of these persons shall perform nor permit any practice that may damage the reputation of or otherwise be injurious to the Building or neighborhood or be disturbing to other tenants, be illegal, or increase the rate of insurance on the Building."

On appeal, the plaintiff raises three arguments in support of her contention that Dalton owed a legal duty to her to prevent Hunter from harming her. First, the plaintiff maintains that such a duty arose because Hunter and McClerty violated the lease agreement and therefore, her injury was causally connected to the apartment building. Second, the plaintiff argues that, because the lease disclosed a voluntary undertaking by Dalton to preclude tenants from disturbing each other, Dalton negligently performed its affirmative undertaking by failing to prevent the plaintiff's injuries. In support of her first two arguments, the plaintiff contends that Dalton had notice of Hunter's prior threats and of the door kicking incident perpetrated by McClerty; that the attack upon the plaintiff in a common area of the building was foreseeable; and that despite Dalton's knowledge that the plaintiff feared for her safety, Dalton did nothing to prevent the attack on October 31. As a final and alternative argument, the plaintiff asks this court to find that the landlord-tenant relationship is a "special relationship," such as that recognized in regard to such business relationships as carrier-passenger and inn-keeper-guest, in which the landlord would possess a more rigorous duty to protect his tenants.

■ Both the plaintiff and the defendant agree that in Illinois, a landlord generally has no duty to safeguard its tenants from the criminal acts of third persons. (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596; *Cross v. Chicago Housing Authority* (1979), 74 Ill. App. 3d 921, 393 N.E.2d 580, *aff'd* (1980), 82 Ill. 2d 313, 412 N.E.2d 472.) However, exceptions have been carved from the general rule and it is in the application of those exceptions that the plaintiff and the defendant part company. The plaintiff relies upon the duty that was imposed upon the landlord in *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47. In *Stribling*, the apartments on either side of the plaintiffs' apartment were vacant and unsecured. The plaintiffs were burglarized three times when third parties demolished a common wall between the plaintiffs' apartment and one of the vacant apartments. The landlord knew of the condition of the vacant apartment after the first burglary but did nothing. The court found that the landlord had no duty to protect against the first burglary. However, the court found that the complaint alleged a duty to protect against the second and third burglaries under these "bizarre" facts and that such a duty arose because, "after defendants had notice of the original burglary and the means used in effecting the burglary, the fact that another burglary could happen in the same fashion became eminently foreseeable." (*Stribling*

*v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 556, 340 N.E.2d 47, 50.) A later decision observed that the duty recognized in *Stribling* arose due to the direct connection between the plaintiffs' injuries and the physical condition of the leased property itself. See *Smith v. Chicago Housing Authority* (1976), 36 Ill. App. 3d 967, 344 N.E.2d 536.

■ It is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39.) Whether such a duty exists is a question of law to be decided by the trial court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.) In determining the existence of a duty, the court must consider the foreseeability of the injury, the magnitude of the burden of guarding against the injury and the consequences of placing that burden upon the defendant. *Trice v. Chicago Housing Authority* (1973), 14 Ill. App. 3d 97, 302 N.E.2d 207; see also *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.

In the instant case the plaintiff argues that her injuries were causally connected to the premises in the same manner in which the *Stribling* plaintiffs' loss was a result of the condition of the property itself and that therefore, Dalton breached a legal duty to her when it failed to protect her against her injury. Specifically, the plaintiff maintains that the causal connection arose when Hunter and McClerty allegedly violated clause 8 of the lease agreement and when Dalton thereafter did nothing to prevent them from residing on the premises or from harming the plaintiff.

■■ ■ We do not believe that Dalton possessed a duty to protect the plaintiff from her injuries. First, the injury complained of by the plaintiff must have been *reasonably* foreseeable in order to impose a duty upon Dalton. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) In other words, there must have been more than a simple possibility of the injury's occurrence, and the incident must have been foreseeable as likely to happen by a reasonably prudent person. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) In *Stribling* the landlord's duty was derived directly from the nature of the physical premises itself. (See *Smith v. Chicago Housing Authority* (1976), 36 Ill. App. 3d 967, 344 N.E.2d 536.) However, in the instant case, the plaintiff points only to the lease and its alleged violation by Hunter and McClerty to support her argument that her injury was causally connected to the premises. Negligent maintenance of the apartment building did not lead to the plaintiff's injuries as it led to the plaintiffs' loss in the *Stribling* case. If the landlord in the *Stri-*

*bling* case had secured the vacant apartments, it was apparent that the burglaries in the plaintiffs' apartment would cease. The subsequent burglaries were reasonably foreseeable because an unoccupied apartment had been used as a conduit for an identical type of burglary in the past. However, in the instant case, we do not think it similarly foreseeable that Hunter would severely injure the plaintiff simply because he had twice threatened her to leave McClerty alone. Reasonable foreseeability must be judged by what was apparent to Dalton at the time of the now complained of conduct and not by what may appear through the exercise of hindsight. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) While there may have been a possibility that Hunter would harm the plaintiff, we do not think the injury that occurred in this case would have been reasonably foreseeable by a reasonably prudent person.

█ Furthermore, we must also assess the magnitude of the burden of guarding against the injury complained of here and the consequences of placing such a burden upon Dalton. (*Trice v. Chicago Housing Authority* (1973), 14 Ill. App. 3d 97, 302 N.E.2d 207.) The injury in the instant case flowed from the interrelationships of three persons who happened to live in the same apartment building. While it may have been understandable for the *Stribling* court to impose a duty upon the landlord to maintain the physical property in a nonnegligent manner, we do not think it similarly feasible to require the landlord in this case to effectively referee the tensions between two tenants and an apparent nontenant. A landlord is ordinarily entrusted with the responsibility of maintaining the premises in a nonnegligent manner. However, he is not normally required to act as an intermediary in the disputes that arise between his tenants. We therefore think that the burden and the consequences of imposing a duty upon a landlord, such as Dalton, to guard against an injury such as the plaintiff's are both unreasonable and overly intrusive.

We consequently believe that the connection to the premises in this case is too tenuous to impose a duty upon Dalton to have protected the plaintiff from her attack by Hunter. More specifically, we do not think that the injury in this case was reasonably foreseeable, that the magnitude of the burden of guarding against the injury was slight or that the consequences of placing the burden upon the defendant were inconsiderable.

█ The plaintiff next argues that clause 8 of the lease agreement indicates a voluntary undertaking on behalf of Dalton to safeguard its tenants from the criminal acts of one another. The plaintiff maintains that because Dalton assumed this affirmative undertaking, it had the

duty to somehow prevent the plaintiff's injuries. The plaintiff cites *Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038, and *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, in support of her argument. In *Phillips*, the landlord sealed off vacant floors of a building in a negligent manner and unauthorized persons consequently gained access to these areas. The plaintiff's decedent was assaulted and killed on one of the negligently secured floors. In *Cross*, the landlord hired a guard service to patrol the building during certain hours of the day. The court found that the landlord had consequently increased the danger to tenants during the other nonpatroled hours of the day. In the instant case, we do not see where the landlord engaged in any such affirmative undertaking to protect its tenants. we do not think that the wording of the lease is analogous to the affirmative actions taken by the landlords in the *Cross* and *Phillips* cases. Therefore, we find that Dalton had no duty to protect against the plaintiff's injuries where it did not affirmatively undertake some action to protect her.

Finally, the plaintiff contends that the landlord-tenant relationship should constitute a "special relationship" so that a landlord would be responsible and liable for the criminal acts of a third party. However, the Illinois Supreme Court has specifically observed that the "special relationship" exception does not apply to the case of a landlord-tenant relationship. (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596.) Therefore, where our supreme court has spoken as such on this matter, we will not consider the merits of the plaintiff's arguments. See *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546.

For the foregoing reasons, we affirm the trial court's dismissal of the count of the plaintiff's complaint relating to the defendant Dalton.

ROMITI, P.J., and JOHNSON, J., concur.