JOSEPH A. DUNCAVAGE, Indiv. and as Adm'r of the Estate of Marybeth Duncavage, Deceased, Plaintiff-Appellant, v. KEVIN J. ALLEN, Indiv. and d/b/a Bay Management Company, *et al.*, Defendants (Kevin J. Allen, Indiv. and d/b/a Bay Management Company, Defendant-Appellee).

First District (2nd Division)   No. 85—2625

Opinion filed August 19, 1986.—Rehearing denied September 17, 1986.

Mass, Miller & Josephson, Ltd., of Chicago (Cary S. Fleischer and Jon A. Duncan, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom, David E. Trainor, and Shaun McParland, of counsel), for appellees.

Illinois Coalition Against Sexual Assault, of Springfield (Judy L. Hogan, of counsel), for *amicus curiae*.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff sued the owners of a residential apartment building to recover damages for personal injuries and death sustained by plaintiff's decedent, Marybeth Duncavage, arising out of a criminal assault by defendant Tommy Lee Jackson. The only defendant involved in this appeal is Kevin J. Allen, the landlord of the apartment building where plaintiff's decedent resided at the time she was criminally assaulted and killed. Pursuant to defendant's section 2—615 motion, the trial court dismissed for failure to state a cause of action all claims asserted against the owners of the apartment building. Several counts asserted against the criminal assailant remain pending in the trial court. Plaintiff appeals.

Defendant Allen allegedly owned and managed an apartment complex located at 710-716 West Buckingham Place in Chicago. On July 27, 1982, plaintiff's decedent, a second-year medical student, entered into a residential-lease agreement with Allen for rental of apartment 1-W. She moved into the apartment on August 1, 1982. At about 3 a.m. on August 4, 1982, Tommy Lee Jackson came into the rear yard adjacent to apartment 1-W and allegedly hid and concealed himself in the darkness of the unlighted exit area and in the high weeds on the property. Using a ladder which plaintiff alleged defendant Allen stored in the yard adjacent to decedent's apartment, Jackson climbed the building's wall and entered apartment 1-W through a window which plaintiff alleged was incapable of being locked. Once inside the

apartment, Jackson tied decedent's hands and feet, tied two ligatures around her neck, and repeatedly raped, sodomized and strangled her until she was dead.

Count I of plaintiff's first amended complaint, as amended, alleged that the ladder used in this incident had been used prior to July 27, 1982, to enter the same window and burglarize the same apartment 1-W. Plaintiff stated that defendant Allen knew of the burglary from tenant complaints, from personal inspection and from a citation he received from the Department of Inspectional Services of the city of Chicago. The complaint alleged that conditions of the building amounted to numerous violations of the Chicago housing and building code, including lack of window screens, defective windows and doors, high weeds, inoperable or burned out interior and exterior lighting, and the failure to remove refuse and debris, including the ladder, from the yard adjacent to apartment 1-W. Plaintiff alleged that these violations substantially increased the danger of criminal attack. Count I further alleged that leasing of apartment 1-W to decedent while the building was in violation of building regulations violated sections 78—15, 78—15.1, 96—2 and 96—12 of the Chicago building code. Plaintiff asserted that even though defendant knew of the previous burglary with the ladder and of the hazards in the building that defendant failed to warn decedent of the dangerous situation and of the building's and apartment 1-W's defects and failed to take reasonable and necessary steps to protect decedent and others or to have prevented the complained of occurrence. Plaintiff alleged that defendant's negligence therefore proximately caused the assault and death of the decedent.

In count III plaintiff alleged that decedent was a consumer and that the Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*) incorporated section 2 of the Uniform Deceptive Business Practices Act (the Uniform Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 311 *et seq.*). Plaintiff stated that defendant had violated section 2 of the Consumer Fraud Act by concealing, suppressing, or omitting material facts concerning the building and apartment 1-W, and by creating a likelihood of confusion or of misunderstanding in the mind of decedent regarding the building's compliance with the Chicago building code. Plaintiff asserted decedent relied on these omissions and misrepresentations.

Plaintiff sought recovery in count IV under the Wrongful Death Act (Ill. Rev. Stat. 1985, ch. 70, par. 1 *et seq.*) and in count V under the Survival Act (Ill. Rev. Stat. 1985, ch. 110½, par. 27—6).

Count IX sounded in strict products liability. Plaintiff alleged that defendant was engaged in the business of selling, supplying or renting residential apartments, including apartment 1-W, that these apartments and their maintenance were products or services distributed in commerce, and that the building and apartment 1-W were unreasonably dangerous from the time they left possession of the defendant. Plaintiff specified storage of the ladder, weeds, defective windows, window sashes and doors, insufficient lighting, lack of screens, and the high-crime area as dangerous and defective. Plaintiff further asserted that defendant had failed to warn decedent of the defects in the building and of the high-crime area.

On January 16, 1985, defendant filed a motion to dismiss counts I through VI and count IX of the amended complaint for failure to state a cause of action. The plaintiff asserted during oral argument on the motion that defendant Jackson had confessed to the crime. The trial court granted plaintiff leave to amend the first amended complaint to allege that on September 12, 1984, the municipal division of the circuit court of Cook County entered an order finding that the apartment complex at 710-716 West Buckingham failed to conform to the minimum standards of health and safety set forth in applicable ordinances of the municipal code of Chicago. The municipal division also found that the premises were unfit for human habitation. Plaintiff also alleged that defendant Jackson chose to enter upon the 714 West Buckingham property because he thought it would be a good building to burglarize because of its dilapidated condition.

After considering plaintiff's response, defendant's reply, and hearing oral argument on the motion to dismiss, the trial court entered an order striking with prejudice counts I through VI of the first amended complaint. Plaintiff appeals from this order. On November 26, 1985, we permitted the Illinois Coalition Against Sexual Assault to file a brief *amicus curiae*.

■■ ■ Initially, defendant contends that plaintiff has expressly waived the issues in punitive damages for wilful and wanton conduct and common law fraud in counts II and VI of the amended complaint by stating in his brief that he will not argue in support of these counts. We agree with defendant that the dismissal of counts II and VI should be affirmed. Defendant also asserts that the dismissal of counts IV and V, the wrongful death and survival actions, should be affirmed because plaintiff failed to address the sufficiency of these counts in his initial appellant's brief. Defendant urges that this violates Supreme Court Rule 341(e). (87 Ill. 2d R. 341(e).) Nevertheless, the waiver rule is a limitation on the parties, not on the courts, and a

reviewing court may ignore the waiver rule in order to achieve a just result. (*Augsburg v. Frank's Car Wash, Inc.* (1982), 103 Ill. App. 3d 329, 333, 431 N.E.2d 58.) The issues are answerable by reference to the record (*Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 793, 424 N.E.2d 911), and we choose to exercise our discretionary authority to consider the points not initially argued. Consequently, we also reject defendant's request to ignore the arguments of *amicus curiae* concerning counts IV and V.

■ Finally, defendant asserts that the brief of *amicus curiae* contains numerous allegations which are dehors the record, in violation of Supreme Court Rule 341(e). (87 Ill. 2d R. 341(e).) Defendant asks us to strike the *amicus* brief in its entirety. We find that the violation complained of does not warrant striking the entire *amicus* brief, but only those portions not supported by the record.

■ The first issue to be determined is whether the trial court properly dismissed with prejudice count I of plaintiff's complaint for failure to state a cause of action because a landlord is not responsible for the criminal acts of third parties. Both parties agree that in Illinois, a landlord generally has no duty to safeguard his tenants from the criminal acts of third persons. (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 208, 399 N.E.2d 596.) However, Illinois cases recognize exceptions to this general rule. (*Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038; *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472; *Krauststrunk v. Chicago Housing Authority* (1981), 95 Ill. App. 3d 529, 534, 420 N.E.2d 429; *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47.) Plaintiff contends that defendant had a duty to maintain the common areas of the building, a duty under the circumstances of this case to protect decedent from criminal acts of third parties, and a duty arising from specific building-code ordinances. Defendant disputes that he owed any such duties to plaintiff's decedent and asserts that a condition of the premises was not here a proximate cause of decedent's injuries.

■ For purposes of review, a motion to dismiss admits all well-pleaded facts and reasonable inferences that can be drawn therefrom. (*Mack v. Plaza Dewitt Limited Partnership* (1985), 137 Ill. App. 3d 343, 349, 484 N.E.2d 900.) In determining the propriety of a dismissal of an action, the reviewing court considers only questions of law presented by the pleadings and tests the sufficiency of the complaint by ascertaining whether the essential elements of a cause of action were alleged. (*Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 191, 478 N.E.2d 603.) All allegations in a complaint should be interpreted in

the light most favorable to the plaintiff. (*City of Chicago v. Department of Human Rights* (1986), 141 Ill. App. 3d 165, 169, 490 N.E.2d 53.) When confronted by a motion to dismiss, unless it clearly appears the plaintiff is entitled to no relief under the provable facts, the complaint must be sustained. *Iverson v. Scholl, Inc.* (1985), 136 Ill. App. 3d 962, 965, 483 N.E.2d 893.

■ To adequately state a cause of action for negligence, the plaintiff's allegations must establish the existence of a duty of care owed by defendant to plaintiff, a breach of that duty, and an injury proximately resulting from that breach. (*Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 190, 478 N.E.2d 603.) Whether a duty exists is a question of law. (*Keller v. Mols* (1984), 129 Ill. App. 3d 208, 210, 472 N.E.2d 161.) A court must decide the existence of a duty by considering the foreseeability of the injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden upon the defendant. *Morgan v. Dalton Management Co.* (1983), 117 Ill. App. 3d 815, 818, 454 N.E.2d 57.

■ Under the circumstances of this case, defendant owed plaintiff a duty of reasonable care. First, a landlord must keep the common areas of a building in a reasonably safe condition. (*Hiller v. Harsh* (1981), 100 Ill. App. 3d 332, 336, 426 N.E.2d 960.) Plaintiff's complaint specifically alleged that the exterior lights adjacent to decedent's apartment were burned out or inoperable, and that weeds were high enough to enable a person to conceal himself in them. He also adequately alleged that a ladder which defendant knew had earlier been used to burglarize the same apartment via the same unlockable window, remained accessible to unauthorized persons on the property. For purposes of a motion to dismiss, these allegations sufficiently established that defendant breached his duty to reasonably maintain areas of the building under his control.

Defendant concedes this duty, but maintains both that the question of proximate cause is a matter of law for this court's review, and that any breach of the duty in the instant case was not the proximate cause of decedent's rape and murder. We disagree with each of defendant's contentions.

■ Ordinarily, the question of proximate cause is one of fact for the jury. (*Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 130, 374 N.E.2d 203.) It is true that proximate cause may be treated as a matter of law in undisputed fact situations in which a court has deemed an intervening event to be so unforeseeable that the first wrongdoer could not have reasonably anticipated a third party to act and cause harm to another. (*Boylan v. Martindale* (1982), 103 Ill.

App. 3d 335, 341, 431 N.E.2d 62.) A criminal act may be an intervening event; however, if the criminal act might reasonably have been foreseen at the time of the negligence, the causal chain is not automatically or necessarily broken by the intervention of such an act. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 80, 117 N.E.2d 74.) In light of the facts alleged in this case, poor or nonexistent lighting, storage of a ladder just outside the decedent's apartment, a previous burglary using the same means of access, and the admission of defendant Jackson that he chose the building due to its dilapidated condition, the criminal assault on and murder of decedent was not so unforeseeable as to make the question of proximate cause a matter of law.

■ Further, defendant's argument that his acts only created a condition to and were not a cause of plaintiff's injuries is not persuasive. We have noted in other decisions that the distinction between cause and condition has been discredited. (*Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 204, 478 N.E.2d 603; *Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102, 108, 440 N.E.2d 253.) Insofar as the distinction remains, it refers to fact situations where a new force intervenes after the negligent activity of the defendant has come to rest in a position of apparent safety. (109 Ill. App. 3d 102, 108, 440 N.E.2d 253.) Here, since defendant Jackson admitted that he selected defendant's property as the scene for his criminal acts because of the property's rundown condition, defendant's allegedly negligent actions in maintaining the building and apartment 1-W do not reflect a position of apparent safety. The cause/condition distinction is therefore inappropriate in the circumstances of this case. Applying instead the familiar test that proximate cause may be determined by asking whether the first wrongdoer should have reasonably foreseen the intervening cause as a natural and probable result of his negligence (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 79, 117 N.E.2d 74), we find that the illegal entry into decedent's apartment was reasonably foreseeable. The precise injury which in fact occurred need not have been foreseen. (*Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 784, 482 N.E.2d 358.) Consequently, the plaintiff's complaint adequately set forth the necessary element of proximate cause.

■ Illinois law also supports finding that defendant had a duty under the circumstances of this case to protect decedent from criminal acts of third persons. While a landlord is not an insurer and cannot be held liable for harm done by every criminal intruder (*Trice v. Chicago Housing Authority* (1973), 14 Ill. App. 3d 97, 100, 302 N.E.2d 207), prior incidents similar to the one complained of and which are connected with the physical condition of the premises may

impose a duty of reasonable case (*Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47). Likewise, a landlord may be liable for harm inflicted on the tenant when his actions materially increase the risk of criminal activity. *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472.

In *Stribling*, plaintiffs alleged that the Chicago Housing Authority allowed free access to vacant apartments. Plaintiffs' apartment was burglarized on three occasions, the burglars each time entering by breaking through a wall connecting plaintiffs' apartment with an adjacent apartment. Plaintiffs' complaint alleged that they had notified defendant after the first burglary, and we held that the defendant owed plaintiffs a duty to guard against the second and third burglaries because defendant had notice of the original burglary. Our basis for imposing liability in *Stribling* was the defendant landlord's failure to respond to a physical condition of the leased property in a way which reasonably would have prevented further thefts in the same manner. The instant complaint similarly alleges defendant knew of a previous illegal entry into apartment 1-W by means of the same unlighted backyard, the same ladder and same window used in the complained of incident. If the landlord in *Stribling* had secured the vacant apartments, "it was apparent that the burglaries in the plaintiffs' apartment would cease." (*Morgan v. Dalton Management Co.* (1983), 117 Ill. App. 3d 815, 819, 454 N.E.2d 57.) Likewise, if defendant in the case at bar had lighted the exit adjacent to decedent's apartment, removed the ladder, and secured the apartment's window, the illegal entries into apartment 1-W, at least in that manner, would have ceased. Neither the magnitude of this burden on defendant nor the consequences of making him guard against an injury for a foreseeable criminal act is unreasonable. As we noted in *Krauststrunk v. Chicago Housing Authority* (1981), 95 Ill. App. 3d 529, 534, 420 N.E.2d 429, while the goal of a crime-free environment might be unattainable, the tasks involved here should be within the capacity of defendant landlord.

We note that *Stribling's* facts, with its series of previous identical burglaries, notice to the landlord, and connection to the leased premises, presented a remarkably strong case for applying Illinois' reasonably foreseeable criminal-act exception. Cases after *Stribling* and before the instant appeal have not again embodied the same three factors posed in a motion to dismiss context. Thus, subsequent treatment of *Stribling* has limited it to its facts; however, the legal premises of *Stribling* have not been attacked. Because of the case at bar's similarities to *Stribling*, we believe precedent supports imposing a

duty on defendant Allen.

We note that plaintiff also relies on *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, as a basis for finding the landlord liable under the circumstances of this case. In *Cross,* the plaintiff was injured by assault at a residential apartment complex. The plaintiff sued defendant and a security service which had contracted with the defendant to provide guard services between 9 a.m. and 1 a.m. Plaintiff was assaulted at 1:15 a.m. after the guards had left the premises. Our supreme court held that the defendant, which undertook to provide part-time guard service, was obligated to use reasonable care not to create increased dangers to persons lawfully on its property.

The instant plaintiff contends that defendant Allen's actions materially increased the risk of criminal activity, as evidenced by the confession of Jackson that he picked out the building because of its dilapidated condition. Defendant counters that *Cross* and its predecessor, *Cross v. Chicago Housing Authority* (1979), 74 Ill. App. 3d 921, 393 N.E.2d 580, do not apply to the facts in this appeal because the cases stand for the proposition that a lessor may be liable for harm to a tenant where the lessor voluntarily undertakes action and does so negligently. Although both interpretations of *Cross* are supported by subsequent cases and commentary, we conclude that the better view limits *Cross* to an example of lessor liability due to the lessor's negligently undertaking to perform a service, and is not applicable here. See, *e.g., Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038; Lesar, *Tort Liability of Illinois Landlords for Crimes of Third Persons,* 1983 S.I.U. L.J. 415.

Plaintiff's final contention in support of count I is that a duty arose from specific building-code ordinances. We agree with plaintiff that *Mangan v. F.C. Pilgram & Co.* (1975), 32 Ill. App. 3d 563, 336 N.E.2d 374, and *Enis v. Ba-Call Building Corp.* (7th Cir. 1980), 639 F.2d 359, support finding such a duty.

In *Mangan,* plaintiff sued her landlord for damages stemming from her fall after being frightened by a mouse which darted from her oven. A local ordinance required the landlord to maintain the building free from rodents. We held that the ordinance created a duty, the plaintiff was intended to come within the ordinance's protection, and that the injury suffered by plaintiff was foreseeably the kind which the ordinance was enacted to prevent. (*Mangan v. F.C. Pilgram & Co.* (1975), 32 Ill. App. 3d 563, 572, 336 N.E.2d 374.) We concluded that the jury had sufficient evidence to determine that violation of the ordinance proximately caused the injury. 32 Ill. App. 3d

563, 572, 336 N.E.2d 374.

In *Enis v. Ba-Call Building Corp.* (7th Cir. 1980), 639 F.2d 359, the court applied Illinois law in a diversity suit and reversed the district court's order which, in favor of defendant landlord, had entered judgment on the pleadings for failure to state a cause of action. Plaintiffs had sued their landlord after they were burned by boiling water which was providing heat in an unheated apartment. A local ordinance required the landlord to furnish heat at specified times and at specified minimum temperatures. The circuit court held that Illinois authority supported finding that the harm which occurred was one which the ordinance was designed to prevent, and that violation of a public-safety statute is evidence of actionable negligence when the violation proximately caused the injury. Finding that the issue of proximate cause encompassed questions of whether a plaintiff comes within the class of persons intended to be protected by the ordinance and whether the injury is of the kind intended to be prevented, the court held that the facts plaintiffs had alleged presented issues which should not have been taken from the trier of fact. 639 F.2d 359, 362.

■■■ Applying the principles of these cases, we note that early construction of the Chicago building and housing code found it to be a public-safety measure covering premises leased to tenants. (*Gula v. Gawel* (1966), 71 Ill. App. 2d 174, 183, 218 N.E.2d 42.) The instant plaintiff-tenant, therefore, was intended to come within the code's protection. Further, one of the purposes of the code was to combat crime (*City of Chicago v. Hadesman* (1958), 17 Ill. App. 2d 150, 157-58, 149 N.E.2d 425), and the code is to be liberally construed with a view toward public safety (*City of Chicago v. Franks* (1957), 15 Ill. App. 2d 189, 193, 145 N.E.2d 806). Although defendant argues that the rape and murder of plaintiff's decedent was not the type of harm the code was designed to prevent, a fair reading of the provisions which plaintiff alleged were violated does not as a matter of law foreclose harm from criminal acts as a harm the code intended to prevent. Interpreted in the light most favorable to the plaintiff, therefore, the allegations in count I detailing the ordinance violations sufficiently stated issues most appropriately determined by a jury.

■■■ In accordance with our conclusion that count I of the complaint should not have been dismissed, we find that plaintiff's counts IV and V, alleging causes of action under Illinois' wrongful death and survival statutes, likewise should not have been dismissed. Count IV sufficiently pleaded a wrongful act and neglect on the part of defendant under circumstances entitling decedent to maintain an action for damages had death not ensued. (*Hubbard v. Aetna Insurance Co.*

(1976), 37 Ill. App. 3d 666, 347 N.E.2d 396.) Count V properly alleged the survival of an action for personal injury. *Town & Country Bank v. Country Mutual Insurance Co.* (1984), 121 Ill. App. 3d 216, 459 N.E.2d 639.

We turned then to the issue of whether the trial court properly dismissed with prejudice count III of plaintiff's complaint which alleged defendant violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). Initially, the parties dispute whether plaintiff's allegation that the Consumer Fraud Act incorporated section 2 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 311 *et seq.*) enables him to maintain an action for damages under the Consumer Fraud Act. Defendant contends that there were no separate allegations of Consumer Fraud Act violations and that only injunctive relief, costs and attorney fees can be awarded for violations of the Uniform Act. A review of the record and of relevant case law does not support defendant's contentions.

First, in count III plaintiff specifically asserted both acts as the statutory basis for the paragraphs which followed. He alleged that his decedent was a consumer, a term not used in the Uniform Act. It is also apparent from the language employed in count III that in paragraphs 69(a) through 69(f), which allege defendant concealed, suppressed, omitted or misrepresented specified facts concerning the premises, plaintiff asserted violations of section 2 of the Consumer Fraud Act. That section provides:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. ***" (Ill. Rev. Stat. 1985, ch. 121½, par. 262.)

Therefore, we find plaintiff did allege violations of provisions found only in the Consumer Fraud Act.

Paragraphs 69(g) through 69(j) further allege violations of various subsections of section 2 of the Uniform Act which, it was alleged, are violations of the Consumer Fraud Act by virtue of its incorporation of the Uniform Act. Defendant urges that these allegations

cannot support an action for damages. However, we have stated that, through the incorporation, the General Assembly intended to provide consumers with protection that was broader than initially provided under either act individually. (*American Wheel & Engineering Co. v. Dana Molded Products, Inc.* (1985), 132 Ill. App. 3d 205, 211, 476 N.E.2d 1291.) Defendant's reliance on *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 483 N.E.2d 1263, is misplaced. In *Glazewski* plaintiff sued under the Uniform Practices Act for money damages and did not assert a claim under the Consumer Fraud Act. The context and apparent intention of the incorporation compels the conclusion that the legislature gave to consumers a vehicle by which they could recover money damages for violations of the Uniform Act.

■■ Defendant also contends that plaintiff cannot recover under the Consumer Fraud Act because the decedent was a victim of a private wrong. We disagree. The argument was specifically rejected in *Tauge v. Molitor Motor Co.* (1985), 139 Ill. App. 3d 313, 316, 487 N.E.2d 436. Further, the analysis in *Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 321-23, 457 N.E.2d 1335, upholding a residential lessee's cause of action brought against her landlord under the Act, supports finding that no allegation of public injury is required. The decisions cited by defendant are clearly distinguishable and do not affect the appropriateness of applying *Tauge* and *Carter* in the instant case. Thus, we hold that plaintiff adequately stated a cause of action under the Consumer Fraud Act.

■■ However, in count III of the complaint, plaintiff also sought punitive damages for defendant's alleged violation of the Consumer Fraud Act. Since plaintiff expressly waived on appeal his count for common law fraud, we must determine whether the Consumer Fraud Act supports a punitive-damage claim that would then survive the death of the injured party under the rationale of *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919, and *Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324, 456 N.E.2d 131. We conclude that the Consumer Fraud Act does not of itself mandate the claim.

In *Froud,* our supreme court declined to overrule *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509. *Mattyasovszky* established that a claim for punitive damages in a common law action for recovery for injuries abates at the death of the injured party. *Froud* explained that this remained good law because *National Bank,* a case subsequent to *Mattyasovszky,* permitted punitive damages to survive where a comprehensive regulatory statute expressly provided for the award of punitive damages. (*Froud v. Celotex Corp.*

(1983), 98 Ill. 2d 324, 331-32, 456 N.E.2d 131.) The *Froud* court emphasized that the intent of the Public Utilities Act construed in *National Bank* was to punish an offender and to discourage similar offenses by allowing punitive damages to be awarded. For *National Bank* to be controlling precedent, the *Froud* court sought a statutory basis for an award of punitive damages "comparable to the provisions of the *** Act referred to in *National Bank.*" 98 Ill. 2d 324, 335, 456 N.E.2d 131.

The circumstances here fall short of the requirements of *Froud.* Although section 10(a) of the Consumer Fraud Act provides that a court may award any relief which it deems proper, the Act does not explicitly authorize punitive damages. Neither does the Consumer Fraud Act parallel the comprehensive regulatory scheme for public utilities construed in *Froud* or evidence the same legislative intent that a claim for punitive damages should not abate upon the death of the injured person. (See also *Raisl v. Elwood Industries, Inc.* (1985), 134 Ill. App. 3d 170, 479 N.E.2d 1106.) While we have noted plaintiff's claim to *Gent v. Collinsville Volkswagen, Inc.* (1983), 116 Ill. App. 3d 496, 505, 451 N.E.2d 1385, in which we permitted punitive damages to be awarded under the Consumer Fraud Act, *Gent* is not authority for the instant issue since no issue of a survival action was there presented. Consequently, we affirm the trial court's dismissal of plaintiff's claim for exemplary damages in count III.

Plaintiff's final contention on appeal urges that the trial court erred in dismissing count IX of the complaint, which alleged a cause of action under the doctrine of strict liability in tort. Plaintiff contends that even if a building is not a product within the strict liability concept (*Lawrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 384, 365 N.E.2d 923), the defective conditions of the light, windows, and window locks are divisible from the property and, therefore, constitute products for strict liability purposes.

We have previously rejected a narrow definitional approach to products liability law, focusing instead on the policy reasons for the doctrine. (*Heller v. Cadral Corp.* (1980), 84 Ill. App. 3d 677, 679, 406 N.E.2d 88.) There is no compelling policy reason to expand the doctrine to encompass the circumstances of the instant case. We find no mass product over which a risk of injury must be distributed and no difficulty of access to a remote manufacturer. Nothing in our holding that a negligence cause of action was properly alleged in count I of plaintiff's amended complaint erodes the general rule in Illinois that a landlord's liability for criminal acts harming his tenants is limited to criminal intrusions which are reasonably foreseeable. We find plain-

tiff's theory of strict liability incompatible with this rule, and affirm the trial court's dismissal of count IX of the complaint.

We reverse the trial court's order dismissing counts I, III, IV and V of the amended complaint. We affirm that order as to counts II, VI and IX and the claim for exemplary damages in count III.

Affirmed in part and reversed in part.

BILANDIC, P.J., and HARTMAN, J., concur.