Peggy POOLE, etc., et al., Plaintiffs,

v.

**ALPHA THERAPEUTIC CORPORATION, etc., et al., Defendants.**

No. 86 C 7623.

United States District Court,
N.D. Illinois, E.D.

April 13, 1988.

Debra A. Thomas, Leonard M. Ring, Leonard M. Ring and Associates, Chicago, Ill., for plaintiffs.

John D. Kuhn, Brinton & Bollinger, Chicago, Ill., for Alpha Therapeutic Corp.

Pamela L. Gellen, Nancy T. O'Shaughnessy, Johnson, Cusack & Bell, Ltd., for Miles Laboratories, Inc.

Douglas F. Fuson, Alan B. Silverberg, Sidley & Austin, Chicago, Ill., for Armour Pharmaceutical Co.

Charles C. Albert, John P. Scotellaro, Bell Boyd & Lloyd, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Defendants move to dismiss five counts of plaintiffs' eight-count complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. These counts are as follows: counts III and VI state claims for relief based on strict products liability; counts II and V seek punitive damages, II under the Illinois Survival Act and V under the Illinois Wrongful Death Act; and count VIII asserts a claim on behalf of Peggy

Poole for negligent infliction of emotional distress. Defendants also move for sanctions under Fed.R.Civ.P. 11. Since plaintiffs have failed to state a claim in all five counts defendants' motion to dismiss is granted and we impose sanctions for plaintiffs' inclusion of count V.

## FACTS [1]

From 1975 until 1987 Stephen Poole, a hemophiliac, purchased and injected into his body an antihemophilic factor, generically referred to as factor VIII. The antihemophilic factor was manufactured, processed, marketed, distributed and sold by defendants. As a result of defendants' failure to perform screening and heat-treating tests, and their failure to warn decedent of the product's risks, Stephen Poole contracted Acquired Immune Deficiency Syndrome ("AIDS"). Poole was diagnosed in March 1986 and died on July 10, 1987.

Originally, Stephen and Peggy Poole filed a complaint in the Circuit Court of Cook County against Alpha Therapeutic Corporation ("Alpha"), Armour Pharmaceutical Company ("Armour") and Miles Laboratories ("Miles"). Defendants removed the case to federal court on diversity grounds in October 1986. Following removal, Travenol Laboratories ("Travenol"), a nondiverse party, was joined as a defendant. This court held that joinder of Travenol did not defeat subject matter jurisdiction. *Poole v. Alpha Therapeutic Corp.*, No. 86 C 7623, slip op. (N.D.Ill. July 22, 1987) [available on WESTLAW, 1987 WL 15176]. After Stephen Poole died, Peggy Poole amended the complaint to continue the action as administrator of her husband's estate.

## DISCUSSION

### I. *Strict Liability (Counts III, VI)*

■ Plaintiffs have asserted two tort claims based on strict liability. Defendants

contend that the Illinois Blood Liability Act,[2] Ill.Rev.Stat. ch. 111½, ¶ 5101, *et seq.* (1985), bars these claims. We agree. Paragraph 5102 of the Act bars any strict liability claim involving the processing or distributing of blood derivatives and products, and provides that

[t]he procuring, furnishing, donating, processing, distributing or using human whole blood, plasma, blood products, blood derivatives and products, corneas, bones, or organs or other human tissue for the purpose of injecting, transfusing or transplanting any of them in the human body is declared for purposes of liability in tort or contract to be the rendition of a service by every person, firm or corporation participating therein, whether or not any remuneration is paid therefor, and *is declared not to be a sale of any such items and no warranties of any kind or description nor strict tort liability shall be applicable thereto,* except as provided in Section 3.

(Emphasis added) (footnote omitted).

Section 3 of ¶ 5103 provides that

[e]very person, firm or corporation involved in the rendition of any of the services described ... warrants to the person, firm or corporation receiving the service and to the ultimate recipient that he has exercised due care and followed professional standards of care in providing the service according to the current state of the medical arts, and in the case of a service involving blood or blood derivatives that he has rendered such service in accordance with "The Blood Labeling Act," effective October 1, 1972.

(Footnotes omitted.)

The Blood Liability statute was enacted in response to the Illinois Supreme Court's decision in *Cunningham v. MacNeal Me-*

---

**1.** For purposes of this motion we regard plaintiffs' well-pleaded allegations as true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Kirk v. Michael Reese Hospital,* 117 Ill.2d 507, 514, 111 Ill.Dec. 944, 948, 513 N.E.2d 387, 390 (1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988).

**2.** The Illinois Blood Liability Act has been upheld as constitutional in a series of Illinois cases. *E.g., Glass v. Ingalls,* 32 Ill.App.3d 237, 241, 336 N.E.2d 495, 499 (1st Dist.1975); *Bingham v. Lutheran General & Deaconess Hospitals,* 34 Ill.App.3d 562, 564–65, 340 N.E.2d 220, 222 (1st Dist.1975).

*morial Hospital,* 47 Ill.2d 443, 457, 266 N.E.2d 897, 904 (1970). *Glass,* 32 Ill. App.3d at 238, 336 N.E.2d at 497. In *Cunningham,* 47 Ill.2d at 457, 266 N.E.2d at 904, a hospital that provided blood contaminated with hepatitis was held strictly liable. Thereafter, the legislature enunciated the policy behind the Blood Liability Act in ¶ 5101 [3] which expresses a preference for encouraging scientific research and development by describing as "services," rather than "sales," the products of those engaging in such scientific activities, and by barring liability where there is no fault.

The Illinois legislature, in rejecting strict liability claims, determined that society's interest in ensuring an adequate blood supply outweighs a plaintiff's interest in bringing such a claim. The fact that almost all states have enacted blood shield statutes insulating blood service providers from strict liability claims demonstrates the nationwide acceptance of such policies. Comment, *Hospital and Blood Bank Liability to Patients Who Contract AIDS Through Blood Transfusions,* 23 San Diego L.Rev. 875, 882 n. 36 (1986). While the statutes often vary in language, courts interpreting them have uniformly held that they bar claims of strict liability. *See Coffee v. Cutter Biological,* 809 F.2d 191, 193 (2d Cir. 1987); *Doe v. Cutter Laboratories,* CA–2–87–0113, slip op. at 4, —— F.Supp. —— (N.D.Texas, Feb. 5, 1988); *Jones v. Miles Laboratories,* No. C 86–13, slip op. at 4, —— F.Supp. —— (N.D.Ga., Dec. 28, 1987); *McKee v. Miles Laboratories,* 675 F.Supp. 1060, 1063 (E.D.Ky., 1987); *Hyland Laboratories v. Superior Court of California,* 175 Cal.App.3d 509, 516–17, 220 Cal.Rptr. 590, 594 (6th Dist.1985). Even in those states where blood shield statutes have not been implemented, courts have been unwilling to subject providers of blood to strict

liability claims. *E.g., Kozup v. Georgetown University,* 663 F.Supp. 1048, 1059 (D.D.C.1987).

In *Clark v. Alpha Therapeutic Corp.,* No. 87–5230, slip op. (S.D.Ill., Oct. 27, 1987), the court was confronted with a case similar to this one. There the plaintiff, a hemophiliac, used an antihemophilic factor manufactured by the defendant and subsequently contracted AIDS. The *Clark* court held that under the Illinois Blood Liability Act, the blood derivatives are "specifically exempt from any claims of strict liability." *Clark,* slip op. at 2–3. While the court barred plaintiff's strict liability claims, plaintiff was allowed to proceed on his claim that defendant negligently failed to warn him of the possibility of contracting AIDS. *Id.* at 6.

As in *Clark,* here plaintiffs' decedent acquired AIDS by using a blood derivative or product and it is immaterial, under the Act, that defendants are commercial sellers and distributors of blood. *See* Ill.Rev.Stat. ch. 111½, ¶ 5102 (1985). Further, the Act is designed "to define the nature of all transactions relating to procuring, furnishing, donating, processing, distributing or using human blood and blood derivatives and products...." *Id.,* ch. 111½. The broad scope of the Act indicates that it includes strict liability claims based on a producer's failure to warn since the warnings attached to a blood product relate to the distribution or furnishing of that product. Thus, while count I states a viable negligence claim against defendants for their failure to warn, the Act prohibits plaintiffs from sustaining a strict liability count on this basis.

█ Plaintiffs also argue that defendants are strictly liable since their failure to warn made factor VIII unreasonably dan-

---

**3.** Paragraph 5101 provides:

The availability of scientific knowledge, skills and materials for the purpose of injecting, transfusing or transplanting human whole blood, plasma, blood products, blood derivatives and products, corneas, bones, or organs or other human tissue is important to the health and welfare of the people of this State. The imposition of legal liability without fault upon the persons and organizations engaged

in such scientific procedures inhibits the exercise of sound medical judgment and restricts the availability of important scientific knowledge, skills and materials. *It is therefore the public policy of this State to promote the health and welfare of the people by limiting the legal liability arising out of such scientific procedures to instances of negligence or willful misconduct.*

(Emphasis added.)

gerous. We disagree. Illinois law adheres to the strict liability scheme set forth in Section 402A of the Restatement (Second) of Torts. *Kirk*, 117 Ill.2d at 516, 111 Ill. Dec. at 948, 513 N.E.2d at 391. Section 402A provides that strict liability will be imposed where one sells a product which is "in a defective condition unreasonably dangerous" to the ultimate user. *Id.* While the absence of warnings accompanying a product can result in the product being deemed "unreasonably dangerous" for strict liability purposes, *Kirk*, 117 Ill.2d at 517, 111 Ill.Dec. at 949, 513 N.E.2d at 392, plaintiffs may not benefit from such a characterization of factor VIII unless decedent was "a person entitled to the protections afforded by the concepts of strict-tort-liability actions against manufacturers." *Winnett v. Winnett*, 57 Ill.2d 7, 10, 310 N.E.2d 1, 3 (1974). Since the Illinois Blood Liability Act prohibits all strict liability claims against distributors and sellers of blood products, decedent was not afforded the protection of the concept of strict liability against defendants, and the failure-to-warn claim cannot serve as an independent basis for strict liability recovery. The Act limits legal liability to negligence and willful misconduct, and we dismiss counts III and VI with prejudice.

## II. *Negligent Infliction of Emotional Distress (Count VIII)*

 Peggy Poole alleges that in the course of ordinary marital relations, and as a result of her husband's contracting AIDS, she has been "directly exposed to the AIDS virus, thereby inflicting upon her tremendous and excruciating emotional anguish from the fear of contracting the AIDS virus" (count VIII, ¶ 14). While "the boundaries of emotional distress law in Illinois are not clearly mapped," *McAdams v. Eli Lilly & Co.*, 638 F.Supp. 1173, 1175 (N.D.Ill.1986), Illinois courts have consistently refused to allow recovery for mental or emotional distress in the absence of a physical injury or illness, and the complaint alleges none.

*Rickey v. Chicago Transit Authority*, 98 Ill.2d 546, 555–56, 75 Ill.Dec. 211, 215, 457 N.E.2d 1, 5 (1983), instructs us to apply "the zone-of-physical-danger rule" in determining whether plaintiff states a viable claim for negligent infliction of emotional distress. In *Rickey*, an eight-year-old boy riding on an escalator with his five-year-old brother watched as his brother's clothing became entangled in the escalator, choking him and leaving him comatose. Their mother brought an action in her eight-year-old's behalf for negligent infliction of emotional distress. At the time Illinois courts applied the impact rule, which denied recovery for negligently caused emotional distress suffered by the direct victim or by a bystander, "unless it was accompanied by a contemporaneous physical injury to or impact on the plaintiff." *Rickey*, 98 Ill.2d at 550, 75 Ill.Dec. at 212, 457 N.E.2d at 2. Instead of applying the impact rule, the *Rickey* court held that

> [a] bystander who is in a zone of physical danger and who, because of defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress. This rule does not require that the bystander suffer a physical impact or injury at the time of the negligent act, but it does require that he must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to him of physical impact. The bystander, as stated, must show physical injury or illness as a result of the emotional distress caused by the defendant's negligence.

*Rickey*, 98 Ill.2d at 555, 75 Ill.Dec. at 215, 457 N.E.2d at 5. Thus the court substituted the impact rule with its own zone-of-physical-danger test.

In cases that followed *Rickey*, courts divided as to whether the zone-of-danger standard applied to all claims for negligent infliction of emotional distress or only in "bystander" situations. *Compare Lewis v. Westinghouse Electric Corp.*, 139 Ill.App. 3d 634, 637–38, 94 Ill.Dec. 194, 196, 487 N.E.2d 1071, 1073 (1st Dist.1985) (*Rickey* not limited to "bystanders") *with McAdams*, 638 F.Supp. at 1178 (zone-of-danger rule applies only in bystander cases).

The Illinois Supreme Court ended the controversy in *Siemieniec v. Lutheran General Hospital*, 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691 (1987). In *Siemieniec*, parents of a child born with hemophilia sought damages for emotional distress based on their claim that they would have aborted the child had the defendants given accurate genetic counseling. The court rejected the claim because the parents failed to allege that the situation caused them danger and physical injury or illness. *Siemieniec*, 117 Ill.2d at 261, 111 Ill.Dec. at 318, 512 N.E.2d at 707. In its discussion of *Rickey*, the *Siemieniec* court never referred to the zone-of-physical-danger rule as an exception, nor did the court limit *Rickey* to bystander cases. The court treated the *Rickey* rule as the standard for claims of negligent infliction of emotional distress and we do so here.[4]

While plaintiff has alleged facts sufficient to arguably place her in the zone of danger and to constitute a reasonable fear for her safety, plaintiff has failed to allege a physical injury or illness resulting from emotional distress. Defendant's motion to dismiss count VIII is therefore granted with leave to amend.

### III. *Punitive Damages (Counts II, V)*

■ We now consider whether the Illinois Survival Act, Ill.Rev.Stat. ch. 110½, § 27-6 (1985), and the Illinois Wrongful Death Act, Ill.Rev.Stat. ch. 70, § 2 (1985), preclude plaintiffs from seeking punitive damages for defendants' willful and wanton misconduct.[5] Plaintiffs do not address the claim for punitive damages under the Wrongful Death Act in their memorandum, which indicates that no basis for the claim exists. Indeed, it is well settled that, under Illinois law, punitive damages are not recoverable under this Act. *In re Johns–Manville Asbestos Cases*, 511 F.Supp. 1235, 1240 (N.D.Ill.1981) (applying Illinois law); *Winter v. Schneider Tank Lines, Inc.*, 107 Ill.App.3d 767, 771–72, 63 Ill.Dec. 531, 535, 438 N.E.2d 462, 466 (1982); *Gardner v. Geraghty*, 98 Ill.App.3d 10, 14, 53 Ill.Dec. 517, 520, 423 N.E.2d 1321, 1324 (1981). Therefore, count V is dismissed.

■ We confine further discussion to count II—plaintiffs' Survival Act claim. Plaintiffs concede that punitive damages are generally not allowed under the Survival Act but they claim that the two exceptions to the general rule apply here. Defendants disagree, asserting that neither the equitable considerations exception nor the statutory exception applies and thus plaintiffs are precluded from collecting punitive damages. We agree with defendants and dismiss count II.

The Illinois Supreme Court in *Mattyasovszky v. West Towns Bus Co.*, 61 Ill.2d 31, 330 N.E.2d 509 (1975), held that punitive damages were not recoverable under the Illinois Survival Act or for a common law action for wrongful death. The court indicated that in some instances, such as where no other remedy exists, strong equitable considerations might require puni-

---

4. In arguing that *Rickey* should not apply, plaintiff relies on *Wetherill v. University of Chicago*, 565 F.Supp. 1553 (N.D.Ill.1983). In *Wetherill*, two plaintiffs alleged that they were injured by exposure *in utero* to diethylstilbestrol ("DES"). Plaintiffs' claims were based on battery, negligence and strict liability. While neither of the *Wetherill* plaintiffs suffered from cancer or precancerous conditions, plaintiffs believed that their prenatal exposure to DES increased the likelihood of contracting cancer. In seeking damages for fear that they might develop cancer, plaintiffs intended to introduce evidence showing the causal connection between DES and cancer. Defendant objected to the use of this evidence on the ground that the feared future injury must be reasonably certain to develop from a present injury to be admissible in court. *Wetherill*, 565 F.Supp. at 1559. The court disagreed stating that Illinois law did not require a present injury but "only a causal link between the fear of future injury and the physical *impact* (as distinct from injury) of defendant's tortious conduct." *Wetherill*, 565 F.Supp. at 1560. The court held that the physical impact requirement was met by the prenatal exposure to DES. *Wetherill*, 565 F.Supp. at 1560. The apparent divergence from *Rickey* may have occurred because both opinions were decided on the same day and the *Wetherill* court did not yet have the new standard before it.

5. While counts II and V do not seek only punitive damages, since they mirror identically counts I and IV—except that they pray for punitive damages—we will dismiss them if we find plaintiffs are not entitled to recover punitive damages on these claims.

tive relief. *Mattyasovszky*, 61 Ill.2d at 37, 330 N.E.2d at 512. Since the death in that case gave rise to statutory actions, the court refused to invoke the equitable considerations exception. *Id.* Contrary to plaintiffs' suggestion, strong equitable considerations are lacking here as plaintiffs' negligence claims provide sufficient avenues for relief.

■ Plaintiffs also assert that the statutory exception, analyzed in *National Bank of Bloomington v. Norfolk & Western Railway Co.*, 73 Ill.2d 160, 171–77, 23 Ill. Dec. 48, 52–55, 383 N.E.2d 919, 923–26 (1978), applies here. In *National Bank*, the plaintiff sought recovery under the Public Utilities Act which expressly provided for such relief. 73 Ill.2d at 173, 23 Ill.Dec. at 53, 383 N.E.2d at 924. In allowing recovery the court described *Mattyasovszky* as a case based on a common law claim and observed that the Survival Act itself was neutral as to whether punitive damages could be recovered. Since the court found that the Survival Act served as "merely the vehicle by which the cause of action, created by the Public Utilities Act, survives the death of the injured person," and the Public Utilities Act specifically allowed awards of punitive damages, the court held that such damages were appropriate. 73 Ill.2d at 174, 23 Ill.Dec. at 53, 383 N.E.2d at 924.

*National Bank* and subsequent cases indicate that plaintiffs may not recover punitive damages under the Survival Act unless their claims are brought pursuant to a comprehensive regulatory statute or scheme which expressly provides for such damages. *See In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 605–06 (7th Cir. 1981), *cert. denied sub nom., Lin v. American Airlines, Inc.*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); *Ballweg v. City of Springfield*, 114 Ill.2d 107, 117, 102 Ill. Dec. 360, 364, 499 N.E.2d 1373, 1377 (1986); *Duncavage v. Allen*, 147 Ill.App.3d 88, 102–03, 100 Ill.Dec. 455, 463–64, 497 N.E.2d

433, 441–42 (1st Dist.1986); *Froud v. Celotex Corp.*, 98 Ill.2d 324, 333–34, 74 Ill.Dec. 629, 633–34, 456 N.E.2d 131, 135–36 (1983). Plaintiffs contend that the Illinois Blood Labeling Act, Ill.Rev.Stat. ch. 111½, § 620–1, *et seq.* (1985), the Illinois Blood Liability Act and the Illinois Food, Drug and Cosmetic Act, Ill.Rev.Stat. ch. 56½ ¶ 501, *et seq.* (1985), apply either separately or as a whole to constitute a regulatory scheme which would bring plaintiffs within the statutory exception. However, plaintiff has not alleged a violation of any of these statutes and, in fact, plaintiff concedes that the Blood Labeling Act does not apply. Even if plaintiff asserted a statutory violation under the Blood Liability Act, the Act does not expressly authorize punitive damage awards and imposition of such damages appears inconsistent with the Act's purpose of limiting liability. Finally, plaintiffs' reliance on the Illinois Food, Drug and Cosmetic Act is misplaced. The Act does not expressly allow the imposition of punitive damages nor does it provide plaintiffs with a cause of action. Since neither the equitable nor statutory exceptions apply here, plaintiffs are not entitled to punitive damages and count II is dismissed.

## IV. Sanctions Under Rule 11

■ Defendants [6] have requested sanctions pursuant to Rule 11 for plaintiffs' inclusion of strict liability and punitive damage claims under the Survival and Wrongful Death Acts.

Rule 11 provides in relevant part that every pleading shall be signed by the attorney and that this signature

> constitutes a certificate ... that the signer has read the ... paper; that to the best of [his] knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or rever-

---

**6.** While not all defendants have moved for sanctions, and some move by joining the briefs of the others, we award sanctions for plaintiffs' inclusion of count V to all defendants. *See* Rule 11 (court may impose sanctions where appropri-

ate "upon motion or upon its own initiative"); *Thornton v. Wahl*, 787 F.2d 1151, 1153 (7th Cir.) (same), *cert. denied*, 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986).

sal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....

The primary purpose of Rule 11 is to deter unnecessary and frivolous filings that burden the judicial system and litigants who have legitimate disputes. *See Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir.1987), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). To increase its effectiveness in meeting these goals, Rule 11 was amended in 1983 to adopt an objective standard of "reasonableness under the circumstances." *Rodgers v. Lincoln Towing Service,* 771 F.2d 194, 205 (7th Cir.1985) (citing Fed.R. Civ.P. 11 advisory committee's note). Under the rule as amended, attorneys have an affirmative duty to conduct a reasonable inquiry into both the facts of the case and the applicable law before filing. *See Thornton,* 787 F.2d at 1153. *See also Stewart v. RCA Corp.,* 790 F.2d 624, 633 (7th Cir.1986) ("Rule 11 *requires* lawyers to think first and file later, on pain of personal liability"). Rule 11 is not meant to penalize attorneys for making a misstep in unsettled areas of the law or to stifle attempts to expand it. However, where the filing has no basis in law the attorney is subject to sanctions. *See Thornton,* 787 F.2d at 1153; *Szabo,* 823 F.2d at 1080 (sanctions appropriate where legal basis of complaint is "whacky").

■ Applying these standards, we conclude that sanctions are not warranted in this case for counts II, III and VI. Plaintiffs' strict liability claims involve questions which were first addressed in Illinois while this motion was pending. In October 1987, a court in the Southern District of Illinois precluded a hemophiliac from suing in strict liability for contracting AIDS through a blood transfusion. *Clark,* slip op. at 2–3. This hardly constitutes well-settled law. Federal district courts across the country have in the past year just begun to explore this issue. Applying the objective standard, plaintiff has made a good faith argument that the Blood Liability Act does not preclude claims premised on a failure to warn. Although we find the argument unpersuasive, we do not think that sanctions are appropriate.

■ Plaintiffs' claim for punitive damages pursuant to the Illinois Survival Act properly noted the general rule that punitive damages are not recoverable under the Act, but contended that this case fits the exception to this rule. Specifically, plaintiffs sought to expand the statutory exception by arguing that several statutes, applied either independently or as a whole, constituted a regulatory scheme that would allow the imposition of punitive damages. While we hold that the statutory exception does not apply, we refuse to penalize the plaintiffs for attempting to expand this exception.

■ Regarding count V, however, we find sanctions appropriate. In this count plaintiff sought to recover punitive damages for defendants' willful and wanton misconduct pursuant to the Illinois Wrongful Death Act. We interpret plaintiffs' failure to respond to defendants' motion to dismiss as an indication that count V was not warranted in the first place. As discussed earlier, Illinois case law clearly establishes that punitive damages are not recoverable for actions maintained under the Wrongful Death Act. Sanctions are appropriate where, as here, a reasonable inquiry into the law would have instructed plaintiffs' attorney not to file this claim.

## CONCLUSION

Defendants' motion to dismiss counts II, III, V and VI is granted with prejudice and count VIII is dismissed with leave to amend. Sanction requests will be granted only with respect to count V of the complaint.