MARY WILLS, Special Adm'x of the Estate of Ruth Gilbert, Deceased, Plaintiff-Appellant, v. De KALB AREA RETIREMENT CENTER *et al.*, Defendants-Appellees.

Second District   No. 2—87—1170

Opinion filed November 1, 1988.

834

Jay Paul Deratany, of Stephen M. Passen, Ltd., of Chicago (Stephen M. Passen, of counsel), for appellant.

Kostantacos, Traum, Reuterfors & McWilliams, P.C., of Rockford (Lawrence R. Kream, of counsel), for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, as special administratrix of the estate of Ruth Gilbert, brought this action in the circuit court of De Kalb County against defendants, De Kalb Area Retirement Center, Mary Kelly, a/k/a Shelly Kelly, Suzanne Mullis, Louise Noe, and Stephen T. Cichy, to recover compensatory and punitive damages for the wrongful death of plaintiff's decedent, Ruth Gilbert, and for Mrs. Gilbert's alleged conscious pain and suffering prior to her death. The trial court dismissed counts III and IV of plaintiff's five-count amended complaint which sought recovery for exemplary relief under the Nursing Home Care Reform Act of 1979 (Ill. Rev. Stat. 1983, ch. 111½, par. 4151—101 *et seq.*) in the context of the Wrongful Death Act (Ill. Rev. Stat. 1983, ch. 70,

par. 1 *et seq.*) and the Survival Act (Ill. Rev. Stat. 1983, ch. 110½, par. 27—6), and count V, which sought common law recovery of punitive damages under the Survival Act. Pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), plaintiff appeals from the trial court's order dismissing counts III, IV and V of her amended complaint.

At the time of her death, decedent, Ruth Gilbert, was a resident at the De Kalb Area Retirement Center (De Kalb). In her complaint plaintiff alleged that on December 9, 1984, defendant De Kalb, through its agents and employees, defendants Mary Kelly, a/k/a Shelly Kelly, Suzanne Mullis, Louise Noe, and Stephen T. Cichy, placed Mrs. Gilbert in a geriatric chair, constrained by an improperly tightened and secured posey restraint, and left her unmonitored and alone for an unreasonable period of time in her room with the door closed and in a location where she could not reach the nurses' call button or otherwise call for help. Plaintiff averred that as a result of one or more of these acts of defendants, Mrs. Gilbert died.

Counts I and II of plaintiff's amended complaint sought damages under the Wrongful Death Act (Ill. Rev. Stat. 1983, ch. 70, par. 1 *et seq.*) and under the common law for injuries sustained by Mrs. Gilbert prior to her death. Similar claims were made in counts III and IV for treble damages, costs, and attorney fees under the Nursing Home Care Reform Act of 1979 (Ill. Rev. Stat. 1983, ch. 111½, par. 4151—101 *et seq.*). Count V sought punitive damages under the common law for injuries sustained by Mrs. Gilbert prior to her death. Pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), defendants moved to dismiss plaintiff's amended complaint, asserting that the Nursing Home Care Reform Act of 1979 did not create or authorize a cause of action for wrongful death or create a cause of action which survives the death of a nursing home resident, that the individual defendants were not subject to liability under the Act, and that plaintiff's common law action for punitive damages for injuries sustained prior to death did not survive Mrs. Gilbert's death. Defendants' motion was supported by a memorandum of law. Plaintiff filed a response to defendants' motion.

Following a hearing conducted on defendants' motion to dismiss, the trial court issued an opinion letter on November 5, 1987, finding that counts I and II of plaintiff's amended complaint constituted proper actions, that counts III and IV were dismissed because the language of the Nursing Home Care Reform Act of 1979 did not provide the relief plaintiff sought, and that count V, seeking common law punitive damages for injuries sustained by decedent prior to her death,

was dismissed. Subsequently, on November 25, 1987, the court entered an order, denying defendants' motion with respect to counts I and II of plaintiff's amended complaint, which remain pending below, and dismissing counts III, IV and V. Plaintiff then filed this interlocutory appeal.

On appeal plaintiff contends: (1) that the trial court erred in dismissing count IV of plaintiff's amended complaint seeking exemplary damages under the Survival Act; (2) that the trial court erred in dismissing count III of plaintiff's amended complaint asserting that the Nursing Home Care Reform Act of 1979 creates or authorizes a cause of action seeking punitive damages for wrongful death; and (3) that the trial court improperly dismissed count V of plaintiff's amended complaint seeking punitive damages at common law for injuries sustained prior to decedent's death.

In her first contention plaintiff maintains that the trial court erred in dismissing count IV of plaintiff's amended complaint seeking exemplary damages under the Survival Act. Plaintiff asserts that the survival statute allows for exemplary damages where there is a statutory basis for such relief and that the Nursing Home Care Reform Act of 1979 provides the statutory basis for pursuing treble damage relief.

For more than 100 years recovery under the Survival Act has been limited to compensatory damages. (*Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 33.) The statute has never been thought to authorize the award of punitive damages. (61 Ill. 2d at 33.) In *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, however, our supreme court, while acknowledging that under *Mattyasovszky* a decedent's estate could not recover punitive damages which the decedent, under the common law, might have recovered had he survived, drew a distinction between punitive recovery based on the common law and that based on the statute.

In *National Bank*, the decedent died as a result of injuries sustained when the automobile he was operating was struck by defendant's train. In count IV of the amended complaint, filed by the administrator of decedent's estate, the administrator charged the railroad with wilful violation of the Public Utilities Act for its failure to keep its right-of-way clear of obstructions (Ill. Rev. Stat. 1969, ch. 111⅔, par. 77 (now Ill. Rev. Stat. 1987, ch. 111⅔, par. 5—201)). The administrator sought both actual and punitive damages under the statute. The railroad contended that the Public Utilities Act did not create a cause of action in a personal representative for compensatory and punitive damages for injuries decedent sustained prior to his death.

The supreme court found otherwise, stating, first, that the "Survival Act does not create a statutory cause of action" but "merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." (*National Bank*, 73 Ill. 2d at 172.) Second, the court indicated that the Public Utilities Act expressly provides that " 'if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment (Ill. Rev. Stat. 1969, ch. 111⅔, par. 77).' " (73 Ill. 2d at 173-74.) Thus, the statute intended to punish an offender and discourage similar offenses by allowing punitive damages whenever an injury resulted from a defendant's wrongful and wilful statutory violation. (73 Ill. 2d at 174.) The court concluded that under the Public Utilities Act, "defendant's punitive liability accrued from the moment the decedent sustained personal injury and, upon decedent's death, his right to recover passed unabated to his estate." 73 Ill. 2d at 174.

On the basis of the supreme court's opinion in *National Bank*, plaintiff argues that because there is also a statutory basis here, as in *National Bank*, for punitive damages, decedent's right to recovery for treble damages passed unabated to her estate. The statutory basis, relied on by plaintiff, appears in section 3—602 of the Nursing Home Care Reform Act of 1979. Section 3—602 provides:

> "The licensee shall pay 3 times the actual damages, or $500, whichever is greater, and costs and attorney's fees to a facility resident whose rights, as specified in Part 1 of Article II of this Act, are violated." (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—602.)

Although this provision provides a statutory basis for punitive damages, under the terms of the provision, the right to this recovery appears limited only to "a facility resident." There is no specific indication in section 3—602 that a resident's representative possesses the same right.

Conversely, the section of the Public Utilities Act, relied on by the Supreme Court in *National Bank* in allowing recovery for punitive damages, provided:

> "In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, such public utility shall be lia-

ble to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. *An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation.*" (Emphasis added.) (Ill. Rev. Stat. 1969, ch. 111⅔, par. 77 (now Ill. Rev. Stat. 1987, ch. 111⅔, par. 5—201).)

Under the specific terms of this provision, "any person" may assert the punitive damage claim, and the words "any person" comprise not only the injured party but also his personal representative after his death. (*Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324, 333.) "The Public Utilities Act is a regulatory statute, and the punitive damages provision is part and parcel of the Act." (98 Ill. 2d at 333.) The fact that the words "any person" are included in the final sentence of section 73 of the Public Utilities Act demonstrates that "the legislature intended that to carry out the regulatory plan for public utilities the claim for punitive damages should not abate upon the death of the injured person." 98 Ill. 2d at 333.

Defendants contend that a similar intention is noticeably absent in section 3—602 of the Nursing Home Care Reform Act of 1979 (the Act), which makes no provision for one, other than the facility resident, to bring an action against a licensee who violates a resident's rights. It is the defendants' position that, had the legislature intended that a resident's claim for treble damages should not abate upon the death of the injured resident, it would have specifically provided for that action. Defendants argue that this conclusion is supported by the fact that, where the legislature intended to create a cause of action under the Act in favor of persons other than residents, it used words to demonstrate plainly such intent. For example, section 3—503 of the Act, which permits an action to be brought in the court where a facility is irresponsibly run, states:

"Where a resident, *a resident's representative or a resident's next of kin* believes that an emergency exists *each of them,* collectively or separately, *may file a verified petition* to the circuit court for the county in which the facility is located for an order placing the facility under the control of a receiver." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 111½, par. 4153—503.

■ Defendants' argument, however, overlooks the terms of section 3—606 and section 3—608 of the Act establishing, in our view,

the rights of other persons to bring a cause of action for punitive damages under section 3—602. Section 3—606 provides:

> "Any waiver by a resident or *his legal representative* of the right *to commence an action under Sections 3—601 through 3—607*, whether oral or in writing, shall be null and void and without legal force or effect." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—606.)

Black's Law Dictionary defines "legal representative" as:

> "A person who oversees the legal affairs of another. Examples include the executor or *administrator of an estate* \*\*\*." (Emphasis added.) (Black's Law Dictionary 807 (5th ed. 1979).)

Thus, plaintiff, who as the administratrix of decedent's estate is decedent's "legal representative," can bring an action under section 3—602. Otherwise, the legislature would not have included in the Act section 3—606 disallowing any waiver by a resident's legal representative of his right to commence an action under 3—602.

Also, section 3—608 demonstrates that one other than a resident can bring an action under section 3—602. Section 3—608 states:

> "A licensee or its agents or employees shall not transfer, discharge, evict, harass, dismiss, or retaliate against a resident, *a resident's representative*, or an employee or agent who makes a report under Section 2—107, *brings* or testifies in *an action under Sections 3—601 through 3—607*, or files a complaint under Section 3—702, because of the report, testimony, or complaint." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—608.)

■ In construing a statute, the court should examine the statutory language and its context as well as its purpose. (*Oberman v. Byrne* (1983), 112 Ill. App. 3d 155, 162.) To ascertain the legislature's intent, the court examines the entire statute and seeks to determine the objective the statute sought to accomplish and the evils it desired to remedy. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 362.) Where, as here, a statute has not been judicially interpreted, a court is guided by both the plain meaning of the statute's language and the legislative intent. *Krall v. Secretary of State* (1988), 168 Ill. App. 3d 478, 483.

The legislature enacted the Nursing Home Care Reform Act of 1979 (Ill. Rev. Stat. 1983, ch. 111½, par. 4151—101 *et seq.*) in the midst of concern over reports of "inadequate, improper and degrading treatment of patients in nursing homes." (81st Ill. Gen. Assem., Senate Proceedings, May 14, 1979, at 184 (statements of Senator Berning).) One of the purposes of the Act is to establish standards for

the treatment and care of nursing home residents. Consequently, a central part of the Act is the resident's "bill of rights" set out in part I of article II of the Act. (Ill. Rev. Stat. 1983, ch. 111½, pars. 4152—101 through 4152—113.) (*Harris*, 111 Ill. 2d at 358.) These rights include the right not to be subjected to abuse or neglect by nursing home personnel. Ill. Rev. Stat. 1983, ch. 111½, par. 4152—107.

To ensure that nursing homes comply with the Act, the legislature expanded the regulatory and enforcement powers of the Department of Public Health, created civil as well as criminal penalties for violations of the Act, and also provided nursing home residents with several statutory remedies against nursing homes. (*Harris*, 111 Ill. 2d at 358-59.) Private remedies were included in the Act because " '[d]espite the best of intentions, the government can only do so much to regulate nursing home care. On the other hand, residents are always in the facilities and their friends, relatives and community supporters can regularly keep an eye on the conditions existing in facilities.' " 111 Ill. 2d at 359, citing Daley & Jost, *The Nursing Home Reform Act of 1979*, 68 Ill. B.J. 448, 453 (1980).

■ Given the reasons for enactment of the Nursing Home Care Reform Act of 1979, the obvious purpose of section 3—602 to punish those who violate a resident's rights and to discourage future violations, and the specific language of sections 3—606 and 3—608 of the Act which makes specific mention of individuals other than a resident who can bring an action under section 3—602, dealing with treble damages, we conclude that the decedent's right to recover punitive damages for injuries incurred prior to her death did not abate upon her death but passed unabated to her estate.

Next, plaintiff contends that the trial court erred in dismissing count III of plaintiff's amended complaint asserting that the Nursing Home Care Reform Act of 1979 creates or authorizes a cause of action seeking punitive damages for wrongful death.

■ Punitive damages are not recoverable under the Wrongful Death Act (Ill. Rev. Stat. 1983, ch. 70, par. 1 *et seq.*; *Winter v. Schneider Tank Lines, Inc.* (1982), 107 Ill. App. 3d 767, 769), but the Wrongful Death Act is not the exclusive remedy when death results from a given tortious act. (*National Bank*, 73 Ill. 2d at 172; *Saunders v. Schultz* (1960), 20 Ill. 2d 301, 309-10.) Relying on the decision in *Saunders*, plaintiff avers that actions independent of the Wrongful Death Act may be brought against a defendant whose wrongful act resulted in another's death and that the Nursing Home Care Reform Act of 1979 creates such a cause of action. Defendants respond that the liability generating portions of the Act are concerned only with

remedies for injuries to residents or for the deprivation of other rights in article II of the Act, that nowhere in the Act is the death of a resident discussed, and that, therefore, the Act does not authorize a cause of action for loss of life.

Plaintiff maintains, however, that since the Act provides for the punishment of nursing homes for their acts of abuse or neglect causing injury to residents (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—602), the Act by implication also permits punitive recovery for a resident's death, as death constitutes the ultimate injury. We do not agree with plaintiff's position.

Where the legislature has intended to create a remedy for the loss of life, it clearly and decidedly has so stated, leaving no doubt that it understood the difference between the words "injury" and "death." (See, *e.g.*, section 6—21 of the Liquor Control Act of 1934 (Ill. Rev. Stat. 1985, ch. 43, par. 135); section 7 of the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1985, ch. 48, par. 172.42); section 9 of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 69); and section 1007 of the Coal Mining Act (Ill. Rev. Stat. 1985, ch. 96½, par. 1007).) Moreover, as in those instances cited above, where the legislature has created a cause of action for the loss of life, it has limited the relief recoverable to compensatory damages for the pecuniary loss incurred as a result of a death. Here, in enacting the Nursing Home Care Reform Act of 1979, the legislature included no provision for the loss of life, not even for the recovery of compensatory damages.

Because the legislature did not expressly create a cause of action for treble damages for the death of a facility resident, any basis for concluding that it intended to contravene the policy of the State against allowing punitive damages for loss of life is clearly absent. As a result, we decline to accept plaintiff's position that the Wrongful Death Act should be expanded by implication to accomplish what the legislature did not intend in the Nursing Home Care Reform Act of 1979. In reaching this conclusion we find it significant that the legislature has, as defendants point out, rejected at least four attempts to amend the Wrongful Death Act to allow the recovery of punitive damages. (82d Ill. Gen. Assem., House Bill 398, 1981 Sess.; 81st Ill. Gen. Assem., House Bill 3364, 1979-80 Sess.; 81st Ill. Gen. Assem., House Bill 785, 1979 Sess.; 80th Ill. Gen. Assem., House Bill 1648, 1977-78 Sess.) Logic precludes us, therefore, from ignoring this treatment of the Wrongful Death Act by the legislature and expanding the Wrongful Death Act by holding that the Nursing Home Care Reform Act of 1979 creates, by implication, a cause of action for punitive damages for wrongful death. Such a determination on our part would, we be-

lieve, completely ignore the legislature's intent to measure recovery for wrongful death by pecuniary loss based upon dependency. We find no indication, in express terms or by implication, that the legislature by providing for punitive damages for violation of a facility resident's rights, intended to deviate from its long-standing policy of rejecting punitive damages for wrongful death.

Plaintiff implies that our supreme court's holding in *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, evidences the legislature's deviation from this long-standing policy. Plaintiff asserts that in *National Bank* the court found that the Public Utilities Act created a cause of action for punitive damages for wrongful death. This implication is clearly erroneous, for in *National Bank* the court found that punitive damages were recoverable under the Public Utilities Act only on the basis of injuries suffered prior to death; it did not hold that they were obtainable under the Wrongful Death Act. *National Bank*, 73 Ill. 2d at 170; *Winter*, 107 Ill. App. 3d at 771.

■ We conclude that the trial court properly dismissed count III of plaintiff's amended complaint asserting that the Nursing Home Care Reform Act of 1979 creates or authorizes a cause of action for punitive damages for wrongful death.

Plaintiff's final contention is that the trial court improperly dismissed count V of plaintiff's amended complaint seeking punitive damages at common law for injuries sustained by the decedent prior to her death. Plaintiff maintains that even if the Nursing Home Care Reform Act of 1979 does not authorize punitive damages, the Survival Act (Ill. Rev. Stat. 1983, ch. 110½, par. 27—6) still allows for punitive damages under common law. To support this contention, plaintiff relies on *Howe v. Clark Equipment Co.* (1982), 104 Ill. App. 3d 45.

In *Howe*, the administrator of the decedent's estate filed a four-count complaint against defendant based on strict liability. One of the counts sought punitive damages for personal injuries sustained by the decedent prior to his death. The trial court dismissed this count on the basis that there is no right to punitive damages under the Survival Act.

Relying on *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, the appellate court reversed the trial court, finding that the lower court was incorrect in dismissing the count based on punitive damages for personal injury. The appellate court opined that *National Bank* stood for the propositions that the Survival Act is only a conduit whereby a cause of action possessed by the decedent may be prosecuted by his personal representative and that if statutory causes of action for punitive damages survive, by logical extension, there is

no bar to similar common law causes of action. We find fault with the *Howe* court's opinion and, in fact, have previously held that a decedent's claim under the Survival Act for punitive damages abates at her death. *Johnson v. Village of Libertyville* (1986), 146 Ill. App. 3d 834, 841, *modified on other grounds* (1988), 119 Ill. 2d 496.

The Survival Act has never been thought to authorize the award of punitive damages. (*Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324; *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 33.) As discussed earlier in this disposition, the court in *National Bank* upheld recovery of punitive damages in an action brought under the survival statute because the underlying cause of action was based on the Public Utilities Act, which allowed for punitive damages. The court in *National Bank* did not find that a similar common law cause of action survived.

■ As our supreme court concluded in *National Bank*, we have also concluded here that the decedent's claim for punitive damages survives her death since the underlying cause of action has a statutory basis allowing for punitive damages. Since we have reached this determination and since a plaintiff can recover either treble damages under the Nursing Home Care Reform Act of 1979 or common law punitive damages, but not both (*Harris*, 111 Ill. 2d at 365), we find that the dismissal of count V seeking punitive damages under the Survival Act was required.

Finally, defendants raise the argument in their brief that the individual defendants are not subject to liability under the Nursing Home Care Reform Act of 1979 because section 3—602, dealing with plaintiff's treble damage claim, specifies that only the "licensee shall pay 3 times the actual damages, or $500." The statute does not state "the licensee and his agents or employees" shall pay.

■ Further, the term "licensee" is defined in the Act as "the individual or entity licensed by the Department to operate the facility." (Ill. Rev. Stat. 1983, ch. 111½, par. 4151—115.) We believe that this definition excludes agents and employees, and we find support for our position in section 3—601 of the Act which, as defendants point out, renders licensees liable for the conduct of their agents or employees. As defendants note, such a provision would be unnecessary if those who work in nursing homes were included within the definition of a "licensee." Therefore, we agree with defendants that the legislature in enacting section 3—602 did not intend that anyone other than a "licensee" shall bear civil liability for treble damages.

■ On the other hand, the legislature has specifically provided for the imposition of potential criminal liability upon individuals who

work in nursing homes by setting forth in section 12—19 of the Criminal Code of 1961 that:

> "(a) *Any person* or any owner or licensee of a long term care facility who abuses a long term care facility resident is guilty of a Class 3 felony. *Any person* or any owner or licensee of a long term care facility who grossly neglects a long term care facility resident is guilty of a Class 4 felony." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 12—19(a).)

We infer, as do the defendants, that the apparent absence of any similar language in the liability generating portion of the Nursing Home Care Reform Act of 1979 indicates the legislature's intent not to impose civil liability under that statute against a nursing home's agents or employees. We conclude that counts III and IV brought under the Act were properly dismissed as to the individual defendants.

■ Defendants also argue in this court that in the event either of plaintiff's claims brought under the Act are remanded for trial, plaintiff may not recover costs and attorney fees attributable to her common law claims or to this appeal. Our review of the record establishes that this issue, particularly as it applies to the recovery of costs and fees for all related claims, common law and statutory, at the trial level, was never raised below. Since the trial court did not have the opportunity to rule on this issue, it is not a proper subject for consideration on appeal. (*Blaszczak v. City of Palos Hills* (1984), 123 Ill. App. 3d 699, 703.) We, therefore, leave this issue for the trial court's consideration upon remand.

For the reasons stated above, the dismissal of counts III and V by the circuit court of De Kalb County is affirmed; the dismissal of count IV is reversed, and the case is remanded for further proceedings.

Affirmed in part; reversed in part and remanded.

LINDBERG, P.J., and WOODWARD, J., concur.