George BURGESS and Cynthia Burgess, Plaintiffs,

v.

CLAIROL, INC., a foreign corporation, Defendant.

CLAIROL, INC., a foreign corporation, Third-party plaintiff,

v.

Jerry W. CARGILL, M.D., Third-party defendant.

No. 87 C 8918.

United States District Court, N.D. Illinois, E.D.

Oct. 30, 1991.

Raymond M. Strass, Brittain & Ketcham, Elgin, Ill., Mary R. Minella, John Christopher Mullen, Cynthia L. Chase, Mullen, Minella & Chase, Chicago, Ill., for plaintiffs.

Michael W. Davis, Sidley & Austin, John Dames, Therese Anne Kelly, Kelley, Drye & Warren, Chicago, Ill., for defendant.

Joseph A. Camarra, Cassiday, Schade & Gloor, Fred R. Lambruschi, Fred Lambruschi Ltd., Chicago, Ill., for third-party defendant.

Lawrence Helms, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for trustees.

## ORDER

NORGLE, District Judge.

Before the court is defendant Clairol Incorporated's ("Clairol") motion to dismiss Count IV of the plaintiff's fourth amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the motion is granted.

## FACTS

Sometime prior to July 1, 1986, George Burgess purchased a product called "The Foot Fixer," which was manufactured and distributed by Clairol. The Foot Fixer was designed to maintain the temperature of

water put into it between 95 and 100 degrees Fahrenheit. George Burgess, a diabetic with poor circulation in his feet, soaked his feet in The Foot Fixer for approximately one-half hour on July 1, 1986. After using the product, both of George Burgess's feet blistered and caused him a great deal of pain. When he went to the hospital, he was told that the blood vessels in his toes were burnt to such a degree that they could no longer supply blood to the tissues in his toes. He subsequently had several operations resulting in the amputation of both his legs below his knees.

George Burgess brought a personal injury suit against Clairol alleging that at the time he used the product, the defendant knew or should have known that diabetics and individuals with poor circulation in their feet should not place their feet in water with temperatures exceeding 95 degrees; that its product could heat water to temperatures exceeding 105 degrees; and that other individuals had been injured by the product. George Burgess also alleged that defendant failed to place warnings on the product and failed to recall the product or issue any public announcement regarding the alleged dangers.

On January 28, 1991, George Burgess died. Shortly thereafter, the complaint was amended in two respects. First, George Burgess's previous personal injury claim was changed to a cause of action pleaded under the Illinois Survival Act (Ill. Rev.Stat. ch. 110½, ¶ 27–6 (1991)), naming Cynthia Burgess as Administrator of the Estate of George Burgess, as the plaintiff. Second, a cause of action alleging wrongful death was added, naming Cynthia Burgess individually as plaintiff.[1] Now before the court is the fourth amended complaint. However, this complaint does not allege the cause of George Burgess's death. Count IV seeks punitive damages from Clairol for acts that allegedly injured the decedent. The defendant seeks to dismiss Count IV on the grounds that punitive damages are not available under the Illinois Wrong-

Death Act, (Ill.Rev.Stat. ch. 70, ¶¶ 1, 2 (1989), and that the Illinois Survival Act (Ill.Rev.Stat. ch. 110½, ¶ 27–6 (1989)), does not permit a claim for punitive damages to pass to the decedent's estate.

Although Count IV of plaintiff's fourth amended complaint, titled "Wilful and Wanton Conduct," seeks punitive, or exemplary, damages, plaintiff's theory of recovery under this count is unclear. Consistent with causes of action brought under the Survival Act, plaintiff alleges injuries, and pain and suffering to the decedent, George Burgess. *See Kwasny v. United States,* 823 F.2d 194, 197 (7th Cir.1987). Consistent with causes of action brought under the Wrongful Death Act, plaintiff alleges that she is George Burgess's next of kin. *See Bass v. Wallenstein,* 769 F.2d 1173, 1188 n. 15 (7th Cir.1985). Realizing that neither statute ordinarily allows for punitive damages, the plaintiff, in her response to Clairol's motion to dismiss, alleges that punitive damages should be allowed due to "equitable factors."

## DISCUSSION

■ On a motion to dismiss, the allegations of the complaint, as well as reasonable inferences to be drawn from them, are taken to be true. *Doe ex rel. Doe v. St. Joseph's Hosp.,* 788 F.2d 411, 414 (7th Cir. 1986). If the plaintiff cannot prove any set of facts that would entitle her to relief, then dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper. *See Papapetropoulous v. Milwaukee Transp. Serv., Inc.,* 795 F.2d 591, 594 (7th Cir.1986); *Thomas v. Cannon,* 751 F.Supp. 765, 766–67 (N.D.Ill.1990).

Whether the plaintiff can recover punitive damages against Clairol is determined by Illinois law because this case comes to the court under diversity jurisdiction and Illinois has the most significant relationship to this case. *See In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979,* 644 F.2d 594, 611–16 (7th Cir.

---

**1.** Since Cynthia Burgess serves both as the plaintiff for the Survival Act claim (as the Administrator of the Estate of her husband) and also as a plaintiff for the purposes of the Wrong-

ful Death Act (as the surviving spouse of her husband), she will simply be referred to as plaintiff, unless a distinction in her roles is necessary.

1981), *cert. denied sub nom. Lin v. American Airlines Inc.*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981) (*"Chicago Air Crash Disaster"*); Restatement (Second) of Conflicts § 145, Comment e (1971).

### I. Failure to Properly Plead a Cause of Action for Wrongful Death.

■ Plaintiff's response to defendant's motion to dismiss relies on *Mattyasovszky v. West Towns Bus Co.*, 61 Ill.2d 31, 330 N.E.2d 509 (1975), for the proposition that certain equitable factors should allow for punitive damages in the present case. Since the equitable factors which plaintiff claims justify punitive damages in the present case were discussed by the *Mattyasovszky* court in the context of a common law cause of action for wrongful death, this court assumes that plaintiff is asserting the same theory of recovery in Count IV of the complaint.[2] Plaintiff's reasoning, however, has one major flaw. Nowhere in the pleadings does she allege that the injuries suffered by the decedent, George Burgess, caused his death. Thus, even if a common law cause of action for wrongful death were to be recognized in Illinois, plaintiff has failed to allege that the defendant's product caused the decedent's death. Plaintiff's failure to allege causation forces the court to dismiss the claim. *See Cunis v. Brennan*, 56 Ill.2d 372, 374, 308 N.E.2d 617, 618 (1974). However, even assuming, *arguendo*, that plaintiff had alleged the necessary causation, the court would still deny recovery of punitive damages for the reasons discussed below.

### II. Illinois' Wrongful Death Act.

■ Under the Illinois Wrongful Death Act, a decedent's surviving spouse and next of kin have a cause of action for damages against the person who wrongful-ly caused the decedent's death. Ill.Rev. Stat. ch. 70, ¶ 2 (1991). However, it is well-settled that the Illinois Wrongful Death Act does not allow for the decedent's surviving spouse and next of kin to recover punitive damages. *See Chicago Air Crash Disaster*, 644 F.2d at 605; *Poole v. Alpha Therapeutic Corp.*, 698 F.Supp. 1367, 1372–74 (N.D.Ill.1988) (imposing Rule 11 sanctions for asserting otherwise); *Mattyasovszky*, 61 Ill.2d at 37, 330 N.E.2d at 512; *Winter v. Schneider Tank Lines, Inc.*, 107 Ill.App.3d 767, 769, 63 Ill.Dec. 531, 532–33, 438 N.E.2d 462, 463–64 (1st Dist.1982). Realizing this, the plaintiff has apparently sought to bring her claim under a common law wrongful death theory. This action was addressed in *Mattyasovszky v. West Towns Bus Co.*, 61 Ill.2d 31, 330 N.E.2d 509 (1975), but has not yet been adopted by any Illinois case.

### III. Common Law Wrongful Death.

In *Mattyasovszky*, the plaintiff urged the court to "recognize a common law action for the death of a person which can include exemplary damages." *Id.* at 34, 330 N.E.2d at 510–11. The plaintiff in *Mattyasovszky* cited two cases where equitable considerations led courts in other jurisdictions to allow a common law wrongful death claim.

The first was *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In that case, the Court allowed a widow to maintain a cause of action for the wrongful death of her husband killed in Florida territorial waters under federal common law since without it, she would have no recovery. *Moragne*, 398 U.S. at 378, 90 S.Ct. at 1776 (overruling *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886)). The availability of punitive damages was not at issue.

---

**2.** Plaintiff's pleadings also seek recovery on theories of breach of warranty, strict liability, negligence, and wilful and wanton conduct. Unlike the plaintiff in *Fireman's Fund Mortgage Corp. v. Zollicoffer*, 713 F.Supp. 1112 (N.D.Ill.1989), the plaintiff here does not seek punitive damages under every count in the complaint. *See id.* at 1116. Rather here the plaintiff seeks punitive damages solely under the theory of "wilful and wanton" conduct. Nevertheless, had plaintiff sought punitive damages under each of the other counts, none would have been available. Since the first cause of action is under contract theory, punitive damages are not available. *See* Ill.Rev.Stat. ch. 26, ¶ 2–713 (1991) (listing remedies for breach of warranty under the U.C.C.). As will be discussed later, since the latter two causes of action are under personal tort theories, punitive damages do not survive the death of the plaintiff under those counts either.

The second case referred to by the plaintiff in *Mattyasovszky* was *Gaudette v. Webb*, 362 Mass. 60, 284 N.E.2d 222 (1972). In that case, the Massachusetts Supreme Court allowed the widow, a mother of three minor children, to bring a cause of action on behalf of the children for the wrongful death of her husband, even though the statute of limitations had run on her cause of action as the widow. *Id.* at 72–4, 284 N.E.2d at 230–31. Again, this case did not discuss the availability of punitive damages. The court allowed the common law cause of action to be brought solely on behalf of the children because no recovery could otherwise be had. *Id.* Thus, in both *Moragne* and *Gaudette*, the plaintiffs would have had no recovery at all if not for the courts' recognition of a common law cause of action for wrongful death.

After this review of *Moragne* and *Gaudette*, the *Mattyasovszky* court stated, "[i]t is apparent, we think, that the strong equitable considerations that were present in the *Moragne* and *Gaudette* cases are lacking in the case before us." *Mattyasovszky*, 61 Ill.2d at 37, 330 N.E.2d at 512. The *Mattyasovszky* court reasoned that because the plaintiff in its case could recover for injuries to the decedent and also for injuries to the next of kin, punitive damages were not necessary to *compensate* anyone. *Id.* Thus, the court was unwilling to recognize a common law cause of action for wrongful death that would allow for punitive damages. However, the court did not reject the future availability of such an action.

Once again, in 1983 the Illinois Supreme Court addressed the availability of a common law cause of action for wrongful death in *Froud v. Celotex Corp.*, 98 Ill.2d 324, 74 Ill.Dec. 629, 456 N.E.2d 131 (1983). In *Froud*, the plaintiffs claimed that the 1978 Illinois Supreme Court decision in *National Bank of Bloomington v. Norfolk & W. Ry. Co.*, 73 Ill.2d 160, 23 Ill.Dec. 48, 383 N.E.2d 919 (1978), effectively overruled

*Mattyasovszky*. *Froud*, 98 Ill.2d at 329–30, 74 Ill.Dec. at 631, 456 N.E.2d at 133. In *National Bank*, the Illinois Supreme Court held that a punitive damage claim could be maintained by the decedent's estate where a statute expressly provided for punitive damages. *National Bank*, 73 Ill.2d at 173–74, 23 Ill.Dec. at 53, 383 N.E.2d at 924. The *Froud* court rejected the contention that *National Bank* overruled *Mattyasovszky*. It noted that unlike the punitive damages sought in *Mattyasovszky* under a common law theory, the punitive damages in *National Bank* were explicitly provided for by statute. *Froud*, 98 Ill.2d at 332–33, 74 Ill.Dec. at 632–33, 456 N.E.2d at 134–35. Therefore, in *National Bank*, that court did not need to address the availability of punitive damages under the Wrongful Death Act or a common law theory, and thus had no opportunity to overrule *Mattyasovszky*.[3]

The *Froud* court also briefly discussed the potential for a common law cause of action for wrongful death which would include punitive damages. The court stated:

> The court in *Mattyasovszky* then considered whether Illinois courts would recognize a common law action for injuries to a person who had died which included punitive damages. It concluded that, no matter how outrageous the defendant's conduct was, such an action was recognized only where 'strong equitable considerations' existed such as the unavailability of any other remedy. Because the death involved in that case gave rise to two statutory actions, one permitting recovery of damages by the decedent's estate under the Survival Act and the other recovery by the next of kin under the Wrongful Death Act, this court refused to impose, in addition, a common law exaction against the defendant, under the label of exemplary damages, which 'becomes a windfall for the plaintiff.'

**3.** The *Froud* court also refused to overturn *Mattyasovszky*. Responding to the plaintiff's arguments, the court stated, "we believe they are better addressed to the General Assembly than to this court in view of the legislature's earlier

expression of its views on the matter in the Survival Act and this court's interpretation of that act in *Mattyasovszky*." *Froud*, 98 Ill.2d at 335, 74 Ill.Dec. at 634, 456 N.E.2d at 136.

*Froud,* 98 Ill.2d at 330–31, 74 Ill.Dec. at 632, 456 N.E.2d at 134 (citations omitted).

The *Froud* court did not appear to reject the possibility that, under certain equitable situations, a common law wrongful death action with punitive damages might be available.[4] However, unlike the plaintiffs in *Moragne* and *Gaudette,* the plaintiffs in *Mattyasovszky* and *Froud* could still recover damages. Thus, the courts in the two earlier cases allowed a common law cause of action for wrongful death in order to compensate the victims who would otherwise go uncompensated. They did not do so in order to punish the wrongdoer or to provide extra compensation to the plaintiff.

■ In the present case, the plaintiff urges this court to find the necessary equitable considerations to justify recognition of a common law cause of action for wrongful death. In doing so, the plaintiff emphasizes the deterrent nature of punitive damages. However, in addressing the "equitable considerations" that might justify a common law cause of action for wrongful death, both *Mattyasovszky* and *Froud* made it clear that equitable considerations focus on the plaintiff and whether any other remedy is available. *See Mattyasovszky,* 61 Ill.2d at 37, 330 N.E.2d at 512; *Froud,* 98 Ill.2d at 330–31, 74 Ill.Dec. at 632, 456 N.E.2d at 134. Just as in *Mattyasovszky* and *Froud,* the plaintiff here can potentially recover compensatory damages under both the survival statute and possibly the Wrongful Death Act. Therefore, even if the Illinois Supreme Court would adopt a common law wrongful death claim which would include punitive damages, the facts of the present case would not come within the equitable considerations discussed in *Mattyasovszky* and *Froud* to justify such action.[5]

Furthermore, it is doubtful "equitable considerations" would ever justify an award of punitive damages. Whereas the equitable considerations look to the plaintiff, Illinois courts have made it clear that punitive damages focus on the actions of the defendant and are intended to punish and deter, not to compensate. *See Hazelwood v. Illinois Cent. Gulf R.R.,* 114 Ill. App.3d 703, 712, 71 Ill.Dec. 320, 328, 450 N.E.2d 1199, 1207 (4th Dist.1983) ("the nature of punitive damages is clearly singular—it is *punishment* for the defendant"); *see also Loitz v. Remington Arms Co. Inc.,* 138 Ill.2d 404, 414, 150 Ill.Dec. 510, 514, 563 N.E.2d 397, 401 (1990). Therefore, if Illinois courts were to ever allow a common law cause of action for wrongful death, it is unlikely that they would allow for punitive damages under such an action.

### IV. Punitive Damages Under the Survival Act.

■ While George Burgess was alive he was able to and did maintain his claim for

---

4. "The American courts have almost universally accepted the rule that a civil action for wrongful death was not recognized at common law...." W.E. Shipley, Annotation, *Modern Status of Rule Denying a Common Law Recovery for Wrongful Death,* 61 A.L.R.3d 906, 909–10 (1975) (also discussing the few exceptions); *but see Haakanson v. Wakefield Seafoods, Inc.,* 600 P.2d 1087 (Alaska 1979).

5. It has been argued that to allow punitive damages where the injured party survives but deny them where the party is killed, makes it cheaper to kill than to maim. *See Mattyasovszky,* 61 Ill.2d at 38, 330 N.E.2d at 513 (Goldenhersh, J., dissenting) (quoting *Mattyasovszky,* 21 Ill. App.3d 46, 54, 313 N.E.2d 496, 502 (2d Dist. 1974)); *see also Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 381, 90 S.Ct. 1772, 1778, 26 L.Ed.2d 339 (1970) ("nothing in ordinary notions of justice suggests that a violation should be nonactionable simply because it was serious enough to cause death"); *Dodson v. Raynor Mfg. Co.,* 87 C20283, 1988 WL 143776, at *2, 1988 U.S.Dist.Ct. LEXIS 15273, at *3–4 (N.D.Ill. Dec. 20, 1988) ("there is no logic in disallowing [punitive damages] in a wrongful death case"); *Larson v. Wind,* 542 F.Supp. 25, 27 (N.D.Ill.1982) ("Death claim admittedly states the strongest case for punitive damage awards, for we wish to deter most powerfully malicious and intentional deprivation of a plaintiff's civil rights resulting in death."); *Ballweg v. City of Springfield,* 114 Ill.2d 107, 102 Ill.Dec. 360, 499 N.E.2d 1373 (1986); *Froud,* 98 Ill.2d 324, 74 Ill.Dec. 629, 456 N.E.2d 131. This court does not dispute the apparent absurdity of this result. However, as the Illinois Supreme Court stated in *Froud* and repeated in *Ballweg,* this is an argument better presented to the state legislature. *But see Martin v. United Sec. Serv., Inc.,* 314 So.2d 765 (Fla.1975) (utilizing this apparent anomaly as justification for construing Florida's wrongful death statute to allow claims for punitive damages).

punitive damages. After his death, when his wife as Administrator of the Estate of George Burgess was substituted as plaintiff, Clairol sought to dismiss the cause of action. Thus, after his death the issue becomes whether George Burgess's claim for punitive damages abated, or whether at common law or by statute his claim for punitive damages was transferred to the administrator of his estate. Therefore, the court must examine the Illinois' Survival Act.

At common law, when a person died any personal tort causes of action which he might have had died with him. *McDaniel v. Bullard*, 34 Ill.2d 487, 493, 216 N.E.2d 140, 144 (1966). In recognition of this inequity, Illinois adopted the survival statute which allows the representative of the decedent's estate to maintain certain causes of action. Ill.Rev.Stat. ch. 110½, ¶ 27-6 (1989). Thus, whether a cause of action survives the death of the injured party is dependent upon the statute.

The Illinois Survival Act states: "[i]n addition to the actions which survive by the common law, the following also survive; ... actions to recover damages for an injury to the person (except slander or libel)...." *Id.* This act "does not create a statutory cause of action. It merely allows [the] representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." *National Bank*, 73 Ill.2d at 172, 23 Ill.Dec. at 52, 383

N.E.2d at 923. The line of Illinois Supreme Court cases including *Mattyasovszky*, *National Bank*, and *Froud* have clearly spelled out the guidelines for the recovery of punitive damages by a decedent's estate.

In *Mattyasovszky*, the Illinois Supreme Court held that the survival statute does not authorize the transfer of punitive damage claims to the decedent's estate because punitive damages are meant to deter and punish and therefore do not fall within the language "damages for injury to the person." *Mattyasovszky*, 61 Ill.2d at 33, 330 N.E.2d at 510. Neither party disputes the continued validity of this holding. However, there is one exception to this rule.[6]

In *National Bank*, 73 Ill.2d 160, 23 Ill. Dec. 48, 383 N.E.2d 919, the Illinois Supreme Court revisited the issue of the availability of punitive damages under the Survival Act and Wrongful Death Statute. There, the decedent was killed after his car was struck by a freight train owned by Norfolk & Western Railway Company. The administrator of the decedent's estate sought punitive damages for violations of the Public Utilities Act (Ill.Rev.Stat. ch. 111⅔, § 77 (1969)). The defendant claimed that under the reasoning of *Mattyasovszky*, the administrator of the decedent's estate could not seek punitive damages because the injured party had died. The court, however, held that where a specific statute provides for punitive damages, the death of the plaintiff does not affect the availability of those damages.[7] *National*

---

6. In *Raisl v. Elwood Indus. Inc.*, 134 Ill.App.3d 170, 89 Ill.Dec. 100, 479 N.E.2d 1106 (4th Dist. 1985), the court stated that there were two exceptions to the rule that the Survival Act does not allow the punitive damage claims to survive. The court apparently took the equitable considerations reasoning from the *Mattyasovszky* case, which only applied to determining whether a common law cause of action for wrongful death should be recognized in Illinois, and applied it to whether a claim can survive under the survival statute. *Raisl*, 134 Ill.App.3d at 175, 89 Ill. Dec. at 104-05, 479 N.E.2d at 1110-11. The *Froud* court's examination of *Mattyasovszky* demonstrates that this was erroneous. *Froud*, 98 Ill.2d at 330-33, 74 Ill.Dec. at 632-34, 456 N.E.2d at 134-36. Nevertheless, several other courts have made the same mistake. *See Poole v. Alpha Therapeutic Corp.*, 698 F.Supp. 1367 (N.D.Ill.1988); *Hamrick v. Lewis*, 515 F.Supp.

983 (N.D.Ill.1981); *Grunloh v. Effingham Equity Inc.*, 174 Ill.App.3d 508, 519, 124 Ill.Dec. 140, 147, 528 N.E.2d 1031, 1038 (4th Dist.1988).

7. Notwithstanding the Wrongful Death Act and the Survival Act, the *National Bank* court allowed the decedent's estate to recover punitive damages because the Illinois legislature had implemented a regulatory scheme that specifically provided for punitive damages. *National Bank*, 73 Ill.2d at 174, 23 Ill.Dec. at 53, 383 N.E.2d at 924. It was not necessary to demonstrate that the survival statute preserved the punitive damages claim. Thus, the *National Bank* court did not need to address the availability of a *common law* cause of action for wrongful death. It found that the statutory punitive damage claim could be brought by the decedent's estate despite the Survival Act. *Id.*

*Bank,* 73 Ill.2d at 174, 23 Ill.Dec. at 53, 383 N.E.2d at 924.

In *Froud,* 98 Ill.2d 324, 74 Ill.Dec. 629, 456 N.E.2d 131 (1983), the Illinois Supreme Court clarified its holding in *National Bank,*[8] and held that where a separate statute specifically provides for punitive damages, the survival statute does not abate the cause of action. *Id.* at 332–33, 74 Ill.Dec. at 622, 456 N.E.2d at 135. However, where punitive damages are sought under common law, the survival statute does not allow the administrator of the decedent's estate to maintain the action. *Id.* Once again, in 1986, the Illinois Supreme Court upheld *Mattyasovszky* and *Froud,* and suggested that any change in the law should be brought about by the state legislature rather than the courts. *Ballweg v. City of Springfield,* 114 Ill.2d 107, 117–18, 102 Ill.Dec. 360, 364–64, 499 N.E.2d 1373, 1377–78 (1986).

In the present case, under the common law, George Burgess's claim for all damages, including punitive damages, abated when he died. The Survival Act does not allow the estate to recover punitive damages, because punitive damages are not "actions to recover damages for an injury to the person." *Mattyasovszky,* 61 Ill.2d at 33, 330 N.E.2d at 510. Furthermore, unlike the plaintiff in *National Bank,* Cynthia Burgess, as administrator of her husband's estate, has not cited any statute that transfers the punitive damage claim upon the decedent's death. Nor has the court found any. Therefore, the Survival Statute did not transfer George Burgess's claim for punitive damages to his estate.

Thus, the estate cannot maintain the punitive damage claim.

### V. Modification of Illinois Common Law.

■ There is yet one other argument available to the plaintiff under which she could potentially seek punitive damages. Just as the Supreme Court did in *Moragne,* and the Massachusetts Supreme Court did in *Gaudette,* it can be argued that legislative and judicial action on this subject have changed significantly enough to warrant an alteration of Illinois' common law. *See* Jeannette M. Watson, *Punitive Damages in Survival Actions: Froud v. Celotex,* 15 Loy.U.Chi.L.J. 623, 638–39 (1984) (Illinois Supreme Court should allow punitive damage claims to survive the death of the plaintiff, not under a construction of the Illinois statute, but rather under the theory that the common law doctrine of abatement should be abandoned altogether); *see also* Thomas F. Londrigan, *Froud v. Celotex Corp.: Rebirth of an Adage,* 17 J. Marshall L.Rev. 781, 794 (1984). This would prevent the courts from having to render a tortuous construction of either the Wrongful Death Act or the Survival Act. Instead, the courts would acknowledge the growth of the law in this area such that the common law doctrine of abatement would be abandoned, thus allowing all causes of action, including those for punitive damages, to pass to a decedent's estate. *See Bryant v. Kroger Co.,* 212 Ill.App.3d 335, 338, 156 Ill.Dec. 487, 489, 570 N.E.2d 1209, 1211 (3d Dist.1991) ("The rule of abatement has its roots in archaic conceptions of remedy which have long since lost their validity. The reason having ceased the rule is out of place and ought not to be perpetuated.")

---

Since *National Bank,* parties have been able to maintain a claim for punitive damages after the death of the plaintiff where a statute specifically provides for punitive damages. *Compare Larson v. Wind,* 542 F.Supp. 25 (N.D.Ill.1982) (to not allow punitive damages would defeat purposes of § 1983) *with Duncavage v. Allen,* 147 Ill.App.3d 88, 100 Ill.Dec. 455, 497 N.E.2d 433 (1st Dist.1986) (Illinois' Consumer Fraud Act does not have comprehensive regulatory scheme or explicit command that would allow punitive damage claim to survive death of plaintiff).

**8.** In *Howe v. Clark Equip. Co.,* 104 Ill.App.3d 45, 59 Ill.Dec. 835, 432 N.E.2d 621 (4th Dist.1982),

the court held that the decision in *National Bank* stood for the proposition "that if statutory causes of action for punitive damages survive, by extension of logic there is no bar to similar common law causes of action." *Id.* at 50, 59 Ill.Dec. at 838–39, 432 N.E.2d at 624–25. However, the next year, the Illinois Supreme Court rejected this interpretation of the *National Bank* decision, (*see Froud, supra* ), and *Howe* has been subsequently criticized as bad law. *See Wills v. De Kalb Area Retirement Ctr.,* 175 Ill.App.3d 833, 843–44, 125 Ill.Dec. 657, 663–64, 530 N.E.2d 1066, 1072–73 (2d Dist.1988).

(quoting *McDaniel v. Bullard*, 34 Ill.2d 487, 216 N.E.2d 140 (1966)). Despite the logic of this argument, it is for the Illinois Supreme Court rather than the federal courts to change Illinois' common law. *See Dodson v. Raynor Mfg. Co.*, 87 C20283, 1988 WL 143776, 1988 U.S.Dist. LEXIS 15273 (N.D.Ill. Dec. 20, 1988); *see also Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir. 1985); *Rusher v. Smith*, 70 Ill.App.3d 889, 896, 26 Ill.Dec. 905, 911, 388 N.E.2d 906, 912 (5th Dist.1979). Furthermore, in light of how recently the *Froud* and *Ballweg* decisions were rendered, it is unlikely that the Illinois Supreme Court would accept such an argument.

## CONCLUSION

When George Burgess died, so did the right to seek punitive damages for the defendant's actions that allegedly injured him. Punitive damages are not available under Illinois' Wrongful Death Act, nor do they pass to the decedent's estate under the Survival Act. Furthermore, the equitable considerations that might justify recognition of a common law wrongful death claim are not present here. Therefore, plaintiffs cannot recover punitive damages. For these reasons, the defendant's motion to dismiss Count IV of the plaintiff's fourth amended complaint is granted.

IT IS SO ORDERED.